Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 1

No. 25-1544

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

TARA MILLER,

Plaintiff-Appellant

vs

DENNIS MCDONOUGH,
Secretary and U.S. Department of
Veterans Affairs

Defendants-Appellees

/

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

/

# PLAINTIFF-APPELLANT'S BRIEF

/

DEWEY RICK MARTIN
13900 Woodward Ave.
Highland Park, MI 48230
(248) 872-7907
Attorney for Plaintiff-Appellant
drickmartin@glottaassociates.com

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Appellant makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly-owned corporation? If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly-owned corporation, not a party to the appeal that has a financial interest in the outcome? If the answer is YES, list the identity of such corporation and the nature of the financial interest:

   No.

/s/ D. Rick Martin
(Signature of counsel)

December 5, 2025
Date

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Sixth Circuit Rule 334(a), Plaintiff-Appellant, Tara Miller, respectfully requests oral argument. Plaintiff believes that oral argument will be helpful in exploring the thorny issues involved in employment discrimination liability and summary judgment jurisprudence that this case presents, and the proper application of the after-acquired evidence rule, and Court's published decision in *McNeal v. City of Blue Ash,* 117 F.4th 887 (6th Cir. 2024). Oral argument will also provide counsel with the opportunity to directly address the Court's concerns before a decision is committed to paper.

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 4

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## STATEMENT OF JURISDICTION

On November 25, 2022 Plaintiff-Appellant filed this action in the U.S. District Court for the Eastern District of Michigan, Case No. 4:22-cv-12865. The District Court entered an order granting Defendant's motion for summary judgment on June 11, 2025 (Dist. CT. Order, RE 51, Page ID # 1118-1142), Plaintiff filed a timely notice of appeal. (Notice of Appeal, RE 53, Page ID # 1144-1145)

This appeal is from a final order or judgment that disposes of all parties' claims. This Court now has appellant jurisdiction pursuant to 28 U.S.C. § 1291.

Respectfully Submitted,

By: Dewey Rick Martin
D. Rick Martin (P-42484)
13900 Woodward Avenue
Highland Park, Michigan 48203
(248) 872-7907
Attorney for Plaintiff-Appellant
drickmartin@glottaassociates.com

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 5

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

# TABLE OF CONTENTS

INDEX OF AUTHORITIES....6

CORPORATE DISCLOSURE STATEMENT....1

STATEMENT IN SUPPORT OF ORAL ARGUMENT....2

STATEMENT OF JURISDICTION....3

STATEMENT OF THE ISSUES....9

INTRODUCTION....11

STATEMENT OF THE CASE....15

STANDARD OF REVIEW....33

SUMMARY OF ARGUMENT....33

ARGUMENT....36

I. The after acquired evidence doctrine makes clear that information learned *after* the *original* adverse employment decision is made, cannot be used as a shield against liability, but only to limit the remedies available to the Plaintiff at trial.

Where the original decision to terminate Plaintiff was made on January 25, 2021, the district court reversibly err in granting Defendant's motion for summary judgment that was supported by evidence acquired after January 25, 2021....36

II. Citing the U.S. Supreme Court's decision in *Muldrow v. City of St. Louis,* the Sixth Circuit in *McNeal v. City of Blue Ash,* clarified the "severe and pervasive" standard from the employee being required to show harm that is "significant, serious or substantial"—to needing only

to show "some" harm that "leaves an employee worse off respecting the employment terms or conditions." In addition, the district court is required to assess the cumulative effect of the adverse actions and harassment taken by Defendant's supervisor creating a hostile work environment.

Where the district court relied on *McNeal*, *supra,* to grant summary judgment on Plaintiff's hostile work environment claim, but rejected and failed to apply the lowered hostile work environment standard, summary judgment was inappropriately granted..........................41

III. The district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under the Rehabilitation Act............48

IV. The district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of age discrimination under the ADEA..........................................50

V. The district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under Title VII...........................51

VI. Defendant's shifting reasons for terminating Plaintiff's employment creates a genuine issue of material fact on the question of pretext, precluding summary judgement, as a matter of law......................53

CONCLUSION..........................................................................................56

RELIEF REQUESTED...............................................................................57

CERTIFICATE OF COMPLIANCE.............................................................58

CERTIFICATE OF SERVICE.....................................................................59

ADDENDUM..............................................................................................60



Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 6

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

# INDEX OF AUTHORITIES

## Cases

*Alexander v. CareSource,* 576 F.3d 551, 557-58 (6th Cir. 2009)......................35

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)......................34, 35

*Bryson v. Regis Corporation*, 498 F.3d 561 (2007)..................................38

*Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)................53

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)...................................34

*Cline v. Cath. Diocese of Toledo,* 206 F.3d 651, 660 (6th Cir. 2000)................51

*Edwards v. U.S. Postal Serv.*, 909 F.2d 320, 324 (8th Cir. 1990)....................54

*EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997)..................52

*Gaglioti v. Levin Group, Inc.,* 508 F. Appx 476 (6th Cir. 2012)......................55

*Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007)........................................49

*Kean v. Brinker International, Inc.*, No. 24-5514 (6th Cir. June 17, 2025)...........50

*Little v. BP Exploration & Oil Co.,* 265, 265 F.3d 357, 363 (6th Cir. 2001).........51

*Marshall v. Rawlings Company, LLC,* 854 F.3d 368 (2017)..........................39

*Mckennon v. Nashville Banner Publishing Co*., 513 U.S. 352 (1995)...11, 36, 37, 38, 41, 47, 56

*McNeal v. City of Blue Ash,* 117 F.4th 887 (6th Cir. 2024).......2, 41, 42, 43, 45, 47, 56, 57

*Muldrow v. City of St. Louis*, 601 U.S. 346; 144 S.C. 967; (2024).......41, 42, 43, 45

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).........................44

*Peck v. Elyria Foundry Co.*, 2009 WL 2868831 (6th Cir. Sept. 8, 2009)...........54

*Pierson v. Quad-Graphics Printing Corp et. al.*, 749 F.3d 530 (6th Cir. 2014)..53, 54

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).........35

*Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)...............48

*Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997)..................53

*Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996)................54

*Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132-33 (2d Cir. 1987)................53

*Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011)....................................40

*Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805 (6th Cir. 2020)................33

*Wyatt v. Nissan N. Am. Inc.*, 999 F.3d 400 (6th Cir. 2021)...........................55

**STATUTES**

28 U.S.C. § 1291 ........................................................................................ 3
29 U.S.C. §§ 623(a), 631(a) (2018).............................................50
Title VII of the 1964 Civil Rights Act............................11, 31, 32, 37, 43, 45
Rehabilitation Act, 29 U.S.C. § 794(a)...................................11, 31, 48, 49
Age Discrimination in Employment Act of 1967 ("ADEA")...........11, 31, 36, 42

**COURT RULES**

Fed. R. Civ. P. Rule 56(a)..................................................33, 34

Fed. R. Civ. P. Rule 56(c)....................................................34

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## CONTROLLING AUTHORITIES

*Mckennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995)

*Muldrow v. City of St. Louis*, 601 U.S. 346; 144 S.C. 967; (2024)

*Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011).

*McNeal v. City of Blue Ash,* 117 F.4th 887, 904 (6th Cir. 2024)

*Marshall v. Rawlings Company, LLC,* 854 F.3d 368 (2017)

*Kean v. Brinker International, Inc.*, No. 24-5514 (6th Cir. June 17, 2025)

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 10

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## STATEMENT OF QUESTIONS PRESENTED

I. The after acquired evidence doctrine makes clear that information learned *after* the *original* adverse employment decision is made, cannot be used as a shield against liability, but only to limit the remedies available to the Plaintiff at trial.

Where the original decision to terminate Plaintiff was made on January 25, 2021, did the district court reversibly err in granting Defendant's motion for summary judgment that was supported by evidence acquired after January 25, 2021?

II. Citing the U.S. Supreme Court's decision in *Muldrow v. City of St. Louis,* the Sixth Circuit in *McNeal v. City of Blue Ash,* clarified the "severe and pervasive" standard from the employee being required to show harm that is "significant, serious or substantial"—to needing only to show "some" harm that "leaves an employee worse off respecting the employment terms or conditions." In addition, the district court is required to assess the cumulative effect of the adverse actions and harassment taken by Defendant's supervisor creating a hostile work environment.

Where the district court relied on *McNeal*, *supra,* to grant summary judgment on Plaintiff's hostile work environment claim, but rejected and failed to apply the lowered hostile work environment standard, was summary judgment inappropriately granted?

III. Whether the district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under the Rehabilitation Act?

IV. Whether the district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of age discrimination under the ADEA?

V. Whether the district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under Title VII?

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

VI. Whether Defendant's shifting reasons for terminating Plaintiff's employment creates a genuine issue of material fact on the question of pretext, precluding summary judgement, as a matter of law?

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## I. INTRODUCTION

This employment discrimination action arises out of Defendant's decision to terminate Plaintiff's employment on January 25, 2021 in violation of Title VII, ADEA, and Rehabilitation Act. The district court granted Defendant's motion for summary judgment, despite the fact it was impermissibly based upon evidence discovered on February 23, 2021. Because the evidence obtained *after* January 25, 2021 could not have been the "motive" or "reason" for Defendant's adverse employment decision, the motion for summary judgment was improperly before the district court, and therefore, should have been dismissed or denied.

The controlling law for the after-acquired evidence doctrine is the Supreme Court's decision in *Mckennon v. Nashville Banner Publishing Co*., 513 U.S. 352 (1995). *McKennon*, makes clear that after-acquired evidence cannot be used to shield against liability, and can only be used to limit remedies at trial.

In an attempt to avoid the consequences of its acts of sex, age and disability based discrimination, Defendant failed to cite or discuss the law set forth in *McKennon, supra.* In *McKennon,* a unanimous Supreme Court held that "after-acquired" evidence does *not* defeat an employer's liability for violating the ADEA. The High Court found that, even if the employee's later discovered misconduct could be considered grounds for termination, the ADEA violation that actually prompted the termination cannot be ignored. The employee's wrongdoing does *not* bar relief "where a private suit serves important public purposes." *Mckennon, supra*. The decision makes clear that information

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

discovered *after* the employer made the *decision* to terminate an employee **can only be used to as a defense to damages, not as a defense to liability**. Thus, the Supreme Court properly clarified that liability for employment discrimination is not barred by after-acquired evidence.

The landmark decision reversed a trend that had developed among the federal circuit courts. When damaging information is obtained at a date *following* the date the decision to terminate was made, ***its relevance with regard to establishing lawful motivation for employment decisions is disqualified***. An employer cannot use information it does not possess, and therefore, after-acquired evidence falls outside the scope of factors causing the employer's action. *McKennon, supra.* Thus, the Court refused in *McKennon* to allow after-acquired evidence of dischargeable conduct to bar an employer's liability. In other words, after-acquired evidence cannot be used to legitimize a discriminatory employment decision, but only to limit the remedies.

The decision in *McKennon* is also in accord with Equal Employment Opportunity Commission ("EEOC") guidelines that state that after-acquired evidence does not bar liability for employment discrimination but may both preclude reinstatement and alter the measure of damages.

In the case at bar, Plaintiff's supervisor, Eric Osterbeck made the decision to terminate her employment in an email to HR dated January 25, 2021:

> I am requesting a probationary removal for SBU HRA Generalist Tara D. Miller She was hired in April 2020

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> as a Schedule A hire and she is serving a two year probationary.
>
> **<u>Again, I am requesting to terminate the employment of Tara D. Miller</u>**, (sic) (Osterbeck's 1/25/2021 Request to Terminate Plaintiff, RE 39-16, Page ID # 668-669 ) (Emphasis added)

Thus, by Defendant's *own* admission, "Plaintiff's unauthorized access of personnel files" discovered by Osterbeck on February 23, 2021, had absolutely nothing to do with Osterbeck's decision made on January 25, 2021 to terminate her employment. (Id.)

The district court also recognized January 25, 2021 as the date the decision was made to terminate Plaintiff:

> On January 25, 2021, **<u>before he knew about Plaintiff's unauthorized access of personnel files</u>, or Rushing's investigation,** Osterbeck recommended her termination. (Dist. CT. Op. RE 51, Page ID # 1124) (Emphasis added)

Yet, the district court granted Defendant's motion for summary judgment that was based upon "Plaintiff's unauthorized access of personnel files" despite Defendant's admission that Osterbeck's decision to terminate Plaintiff was made "before he knew about Plaintiff's alleged misconduct. (Id.)

Because the motion was impermissibly supported by *after-acquired evidence*, it was improperly before the district court, and therefore, should have been dismissed or denied. In failing to do so, the district court committed legal error, fatal to its decision. As the Supreme Court made clear in *McKennon*, after-acquired evidence of wrongdoing

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

does not bar litigation or warrant summary judgment on liability, but only limit the remedies that can be awarded if the employer is found liable at trial.

Because the district court inappropriately relied upon after-acquired evidence as a shield against liability, summary judgment was inappropriately granted as a matter of law.

## II. STATEMENT OF THE CASE

### A. Relevant Factual Background

Plaintiff, Tara Miller was born July 8, 1969. She joined the United States Army on May 9, 2011 and continues to serve the country as a Sargent First Class in the U.S. Army Reserves Unit. (Plaintiff's Declaration ¶ 1, RE 48-2 Page ID # 881) Plaintiff re-enlisted in the Army Reserves twice: in 2017, and the second time in June 2024. (Id.; Re-enlistment Certificates, RE 48-3, Page ID 889-902)

Unfortunately, during Tara Miller's service, she was violently physically sexually assaulted by male soldiers twice. (Plaintiff's Declaration ¶ 2, RE 48-2, Page ID # 881) The first sexual assault occurred in 2014 at Fort Gillem, Georgia, and the second one occurred in 2015 while she was on duty in Kuwait. (Id.)

In a *Military Mental Health* article entitled: **"Sexual Assault in the Military"** (Military Mental Health Article, RE 48-4, Page ID # 903-915) the authors state in part:

> Sexual assault remains a persistent problem in the military, with an estimated **20,000 active duty service members experiencing unwanted sexual contact in 2014 [1•], and sexual assaults even occurring in combat environments [2]. Estimates of sexual assaults that occur during**

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> **military service range from 9.5 to 43% among women and 1–12 % among men** [3]. (Emphasis added)
>
> * * *
>
> The impact of sexual assaults on victims can be devastating, affecting their psychological and physical health, military career, and success once leaving the military. **Sexual assaults are a major contributing cause to post-traumatic stress disorder (PTSD) in female service members and veterans [13, 14]. Depression, substance abuse, and eating disorders likewise have been linked to sexual assault in military and civilian populations** [15–19]. A wide range of medically unexplained physical symptoms have also been associated with sexual assault [17, 19–21]. **Sexual assaults are a major reason that some female service members leave the military [22, 23]. As a result of military-related sexual trauma, many female veterans struggle transitioning back into civilian life, with some ending up homeless**. (Id.) (Emphasis added)

As a result of the "two" sexual assaults suffered by Tara Miller she was awarded a "70%" service-connected psychiatric disability for PTSD with a history of MST [Military Sexual Trauma]." (Plaintiff's Declaration ¶ 4, RE 48-2, Page ID # 882; Schedule A-Disabled Veteran Letter, RE 48-5, Page ID # 916)

Plaintiff specifically sought government employment to keep from being terminated during the times of deployment overseas or for training missions in the states. (Plaintiff's Declaration ¶ 5, RE 48-2, Page ID # 882) Plaintiff had been told by others that doing volunteer work for the VA would increase her chances of being offered a full-time position. (Id.)

So, on February 4, 2020, Plaintiff began working at the VA in Detroit as a "volunteer" in the Human Resources Department as a receptionist, despite her resume,

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

which included "two" doctorate degrees and former position of Human Resources Specialist in the U.S. Army. (Id. ¶ 6, RE 48-2, Page ID # 882; Plaintiff's Resume, RE 48-6, Page ID # 917-920)

On March 31, 2020, Eric Osterbeck a supervisor in the Human Resources department hired Plaintiff as a full-time Human Resources Assistant at a G-7 pay scale to start on April 1, 2020. (Plaintiff's Declaration ¶ 7, RE 48-2, Page ID # 882-883) At the time she was hired, Osterbeck knew from Tara Miller's application that she was a Scheduled "A" hiring with a "severe physical, intellectual or psychiatric disability." (Id.) Osterbeck told Plaintiff she was would be under a "two year probationary period and could be terminated at his discretion." (Id.) However, during her orientation with Osterbeck he purposely did not tell Plaintiff that she had the right to join the union. (Id.) In fact, Plaintiff was told the opposite by several HR administrators. (Id.)

Despite Supervisor Osterbeck's knowledge that Tara Miller had a severe psychiatric disability, he immediately subjected her to *unwelcomed* sexual advances and sexual innuendos, causing her to immediately relive the two violent sexual assaults for which she was undergoing psychiatric treatment for PTSD and MST. (Id. ¶ 8, RE 48-2, Page ID # 883; )

On April 15, 2020, just 14 days after being hired, Osterbeck called Tara Miller into his office. (Id. ¶ 9) At the conclusion of the meeting regarding his expectations, Osterbeck stated: "You may help yourself to any candy, and Rice Krispy treats in my office at any time." (Id.) He then said with a flirtatious smile: "Because around here they

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

call me the Candy Man." (Id.) In an instant, Tara Miller's brain retriggered to the sexual assaults; she did *not* see Osterbeck, she saw the two soldiers who sexually assaulted her. (Id.) That is consistent with mental illness of PTSD and MST (Military Sexual Trauma). (Psychiatric Disability Letters, RE 48-22, Page ID # 1100-1104) Plaintiff was extremely uncomfortable with Osterbeck's comment because she knew that the expression "Candy Man" has a sexual connotation in that "Candy" refers to a man's "penis." (Id. ¶ 9; Candy Man (Christina Aguilera Song) RE 48-7, Page ID # 925). That is why Osterbeck's statement immediately retriggered the trauma of the two sexual assaults she encountered in the Army. (Plaintiff's Declaration ¶ 10, RE 48-2, Page ID # 882-883; Psychiatric Disability Letters, RE 48-22, Page ID # 1100-1104).

However, Tara Miller masked her emotions and anger because she knew she needed a government job. (Plaintiff's Declaration ¶ 10, RE 48-2, Page ID # 882-883). Federal agencies are one of few employers who will allow military reservists to return to the position they would have had they not been in deployment or on training missions. (Id. ¶ 11, RE 48-2, Page ID # 884) Not wanting to risk losing her newly acquired VA job, Plaintiff remained silent, disgusted, and shocked as she thought to herself: "Here I go again with same uncouth sexual innuendos." (Id. ¶ 12)

Undeterred by Tara Miller's silence at his unwelcomed "Candy Man" comment, Osterbeck thought he would give it another try. (Id. ¶ 13) On April 21, 2020 as Osterbeck and Plaintiff were walking past each other in the office hall-way, Osterbeck began ogling her body from her hips to her breast. (Id. ¶ 14) And when he reached Plaintiff he stated

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

with a flirtatious grin: "You look nice!" (Id.) The way Osterbeck was staring at Plaintiff's body made Plaintiff feel as though he was looking through her cloths. (Id. ¶ 15) Tara Miller thought to herself: "Here we go again with female body objectification," which again, immediately sent her mind back to Fort Gordon, Georgia and Camp Arifjan, Kuwait. (Id.)

Plaintiff decided to take the risk of making a stronger non-verbal resistance to Osterbeck's *second* unwelcomed sexual advance. (Id. ¶ 16) She made sure this time, he saw a look of disgust and shock on her face, she loudly sighed, and rushed away from him. (Id.)

As a result, of Plaintiff's strong expression of opposition to Osterbeck's unwelcomed sexual advances, Osterbeck decided that Plaintiff had to be fired. (Id. ¶ 17) He, therefore, decided surreptitiously to retaliate against Plaintiff by structuring a hostile work environment that was designed and intended to cause Plaintiff to either quit, or lead to her unlawful firing. (Id.)

The first step was to hire someone who Osteerbeck believed would "play his sexual games." (Id. ¶ 18) That individual was Erica Bethany, a substantially younger woman in her 30's with a turbulent VA work history that included a recommendation that she be discharged. (Id.) Osterbeck faced a difficult roadblock in hiring such an employee in the HR department. (Id.)

To hire Bethany, protocol required that a panel would review Bethany's work history, as compared to the other possible candidates. (Id. ¶ 19; Osterbeck Dep. RE 48-8,

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 20

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Page ID # 950-951) A member of the HR department hiring panel, Glen Belcher told Plaintiff the panel would never have approved Bethany's hiring. (Plaintiff's Declaration, ¶ 20, RE 48-2, Page ID # 855; Osterbeck Dep. RE 48-8, Page ID # 928-930) Therefore, Osterbeck violated protocol, a serious infraction of regulations in order to hire someone who would "play his sexual games." (Plaintiff's Declaration, ¶ 20 RE 48-2, Page ID # 885) He was successful in implementing his plan. (Id.) Bethany was hired and was to report to work on May 19, 2020 as a Human Resource Generalist G-6. ***She reported late the first day of work***, and continued to be late virtually every day thereafter, without being disciplined. (Id.; Osterbeck Warning of Disciplinary Action to Bethany, RE 48-9, Page ID # 966-982, Bethany Tardiness Emails, RE 48-6, Page ID # 921-924)

As Osterbeck expected, Bethany immediately acceded to his sexual advances, sexual banter and sexual innuendos by engaging in flirtatious behavior along with Osterbeck's assistant, Angela Thompson. (Plaintiff's Declaration, ¶ 21 RE 48-2, Page ID # 886) They would often continue their flirtatious behavior while following Osterbeck into his office and closing the door. (Id.) Osterbeck would claim they were having a "office" meeting, but Plaintiff was always excluded. (Id.) Another way they "played" Osterbeck's sexual games was by spewing the "F" word and by wearing extremely tight fitting sexually provocative clothing. (Id.) On one occasion in Bethany stated to Plaintiff: "You just play the game." (Id.)

Osterbeck rewarded Bethany with favorable treatment for being willing to "play the game," that included: (1) being allowed to report late for work 3-4 times a week,

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

resulting in an unfair increase in Plaintiff's workload without compensation; (2) being provided the proper and complete training required to successfully perform the HR job duties, while Plaintiff's request for the same training given her co-worker was repeatedly denied; (3) allowing Bethany and Angela Denise Thompson to wear sexually provocative clothing in violation of the dress code; (4) giving Bethany and Thompson a $1,000.00 COVID award for working the COVID Screening Desk, while refusing to award Plaintiff for the work she performed at the COVID Screening Desk on July 3, 2020 from 7:00 a.m. to 3:30 p.m.; (5) allowing Bethany to be hostile, belligerent, and disrespectful to Plaintiff; (6) allowing Bethany to be hostile, belligerent, and disrespectful to VA patients, customers and VA employees; and (7) allowing Bethany to use vulgar and profane language in the office including the F word and N word without being punished in any way or manner. (Id. ¶ 22)

Bethany's and Plaintiff's job duties as Human Resource Generalists included the following:

> To write Employee Verification Letters, for VA personnel, and Standard Operation Procedures, edited memorandums, write advertisement slogans for VA "Open Season" Health Care Marketing pitches, conduct research to assist all potential new hires with employment at the VA, host New Employee Orientation Workshops to onboard new hires, arrange "Open Season" Health Care Fairs, for VA Employees, provide direct coverage to HR Department front desk office, consulted with new hires about selected Health Care coverage, and benefits, prepare New Employee Orientation folders, for medical and non-clinical personnel, assisted retirees and those who resigned with their clearance requirements, prepare Transmittal

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> Forms, for Employee Drug Testing, and Employee Health Physical appointments, assist all Detroit VA Medical Center personnel internally, and externally with Thrift Saving Plan inquiries, provide guidance to VA Employees on how to complete Family Medical Leave Act Plans, and Loan Forgiveness Forms, Verified VA Employment Status, assist with Death Gratuities and Physician Bonuses, track and input Detroit VA Employees' service-time on an Excel Spread-sheet to track their years of service, distribute all in-coming mail to Human Resource Managers and HR personnel, receive data and update the VA Transit Subsidy Excel spread sheets, for employees who utilized public transportation, research and extract personnel information in HR Smart, USA Staffing, Electronic Office Personnel Manager (eOPF), and Veterans Health Information Systems and Technology Architecture (VISTA) to assist VA Employees with benefits information, or other miscellaneous requests, code personnel Actions in the HR Smart System based on the Guide to Process Personnel Actions, and process close to 2,700 Telework Agreements throughout the John D. Dingell VA facility between August 5, 2020 through February 24, 2021. (Id. ¶ 23)

Given Plaintiff's and Bethany's extensive job duties and responsibilities, Osterbeck knew that allowing Bethany to be consistently come late for work virtually every day would significantly worsen the conditions of her employment by substantially increasing Plaintiff's work-load, job stress and anxiety. (Id. ¶ 24) In response to numerous complaints about from the HR department staff about the negative impact Bethany's tardiness is having on co-workers and customers, Osterbeck finally issued Bethany a written reprimand. The letter also warned disciplinary action being taken against her for any "future incidents." (Osterbeck's Warning Letter to Bethany, RE 48-9, Page ID # 966-982). Despite this warning, Osterbeck admitted at his deposition that

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Bethany continued to be late and he never disciplined her for this "unacceptable" work rule violation. (Osterbeck, Dep. RE 48-8, Page ID # 951-962; Bethany Tardiness Emails, RE 48-6, Page ID # 921-924)

When Osterbeck was asked at his deposition why he allowed Bethany to report to consistently come late for work in direct violation of the work rules, he lied. He testified that the reason he allowed such a self-evident work rule violation was because Bethany was a *single* parent who was caring for a severely disabled child. (Id.). However, Bethany testified at her deposition that her child was in the custody of his father during the workweek and in her custody *only* on Saturdays and Sundays. (Bethany, Dep. RE 48-10, Page ID # 984, 988) In other words, Osterbeck knowingly testified falsely at his deposition. (Id.)

A jury could reasonably find from Osterbeck's false testimony that the real reason he did not discipline Bethany was because she welcomed his sexual advances, sexual innuendos and sexual banter and joined him in his scheme to create a work environment so hostile that Plaintiff be forced to either quit or be terminated based upon the false accusations. (Id.)

Osterbeck's retaliatory acts "deployed strategically as harassment" to add to the climate of hostility, included (1) failing to inform Plaintiff of her right to join the union; (2) failing to provide Plaintiff with the proper training required to successfully perform her job duties and responsibilities that he had his assistant Angela Thompson provide Bethany, and refusing to allow Plaintiff to seek proper training from others. This form of

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

retaliation was intended to and did cause Plaintiff to make errors she would not have made with proper training, provided Osterbeck with the opportunity to constantly threaten Plaintiff with being fired, despite the lack of proper training; (3) continuing to allow a substantially younger co-worker Bethany to be consistently late for work in order to increase Plaintiff's work load; (4) falsely accusing Plaintiff of wrongdoing and of mistreatment of customers; (5) yelling, berating, and belittling of Plaintiff for minor errors that were also committed by Bethany and others, and threatening to terminate her employment; (6) mocking, demeaning and ridiculing Plaintiff's psychiatric disability by referring to her as "crazy," and repeatedly telling Plaintiff she has "no common sense;" that she lacked the "mental" ability to "complete simple" tasks, "follow simple" directions, that he had "never supervised a person like her," and repeatedly telling her she "skating on thin ice," constantly reminding Plaintiff that she was a 2-year probationary employee who could be terminated at his discretion, and punished me for exercising my rights as a disabled veteran to medical treatment; and (7) soliciting customers to file false complaints against Plaintiff. (Plaintiff's Declaration, ¶ 27, RE 48-2, Page ID # 889; Plaintiff's EEO Affidavit, RE 48-11, Page ID # 989-1006)

The unbearable hostile work environment orchestrated by Osterbeck placed Tara Miller, (who Osterbeck knew suffered from a psychiatric disability) in a perilous contradiction. (Plaintiff's Dep. RE 41-2, Page ID # 724-727) Because Plaintiff needed government employment to accommodate her military duty tours, she could not simply quit, which is what Osterbeck wanted and intended to happen. (Plaintiff's Declaration, ¶

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

27, RE 48-2, Page ID # 889) That left Plaintiff with no other choice then to file complaints against her co-workers and Osterbeck to try to end the harassment. (Id.) Plaintiff's medical records show that as a direct result of the "work environment" Plaintiff had to increase her psychiatric counseling visits and the medication for her depression, mental anguish, and anxiety. (Id.)

In August 2020, Plaintiff's first complaint was initially filed against her co-workers. (Id. ¶ 28) The hostile work environment complaint was assigned to VA harassment and hostile work environment investigator, Zenia Berry who informed Osterbeck about the complaint. (Id.) Osterbeck retaliated by continuing to allow Bethany to report late for work, continuing to falsely accuse Plaintiff of minor errors, and accusing Plaintiff of being the employee who caused the hostile and toxic work environment of which she complained. (Id.)

On December 17, 2020, 5 weeks before Osterbeck recommended Plaintiff's termination on January 25, 2021, he demonstrated animus towards her known service-connected psychological disability. (Id. ¶ 29; Disability Leave Emails, RE-48-12, Page ID # 1031-1038) First, Osterbeck knowingly lied in claiming he did not know that Plaintiff had a service-connected severe disability. (Plaintiff's Declaration, ¶ 29, RE 48-2, Page ID # 890) He did so, in order to require Plaintiff to use up her "sick time" instead of the benefits she was entitled to as a disabled veteran.(Id.) In other words, Osterbeck lied in order to retaliate against Plaintiff for rebuffing his unwelcomed sexual harassment and refusing to, in the words, of Bethany: "play his sexual games." (Id. ¶ 30) As a result,

Plaintiff was wrongfully denied the 104 hours she was entitled to use a disabled veteran. (Id.) Instead of quitting, on December 28, 2020, Plaintiff contacted VA's Equal Employment Opportunity Specialist, Donald Scott to seek help against Director Osterbeck's sex, age and disability based harassment. (Id. ¶ 31, Page ID # 890-891; Scott Email, RE 48-13, Page ID # 1039-1040) Plaintiff specifically informed Scott of Osterbeck's unwelcomed sexually advances, including, the "Candy Man" comment. (Plaintiff's Declaration, ¶ 31, RE 48-2, Page ID # 890-891) Scott told Plaintiff that because she was a probationary employee that her supervisor may fire her in retaliation. (Id.)

On January 21, 2021, Director Ostebeck yelled at Plaintiff, mocked and ridiculed Plaintiff's psychological disability, and then threatened to fire her. (Osterbeck also, falsely accused Plaintiff of intentionally failing to comply with his instruction about "mass-email" communications. (Plaintiff's Declaration ¶ 32, RE 48-2, Page ID # 891).

On January 21, 2021, Plaintiff emailed Dr. Pamela Reeves, the Director of the John D. Dingell VAMC pleading for help. In a very lengthy email, Plaintiff informed Director Reeves about the severe and pervasive hostile work environment created by her supervisor, Eric Osterbeck. (Id. ¶ 33)

On January 21, 2021, VA Harassment Prevention Program Specialist, Cindy Bukowsky responded to Plaintiff's continued complaints of severe and unrelenting harassment, and of Osterbeck's retaliation for making the sexual harassment complaint against him. (Id. ¶ 34) Bukowsky told Plaintiff that she needed to take her complaints





LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

against Osterbeck to the VA Office of Accountability and Whistleblower Protection Office, which Plaintiff immediately did, but never received a response. (Id.; Bukowsky Email Chain, RE 48-14, Page ID # 1041-1051)

On January 22, 2021, Plaintiff, once again, informed Bukowsky, of the hostile work environment she was being subjected to, not only, from her co-workers, but also, from her supervisor, Eric Osterbeck. (Plaintiff's Declaration, ¶ 35, RE 48-2, Page ID # 891-892; Bukowsky Email Chain, RE 48-14, Page ID # 1041-1051)

Plaintiff expressed her fear of being terminated in retaliation for her complaints. (Id.) Plaintiff also told Bukowsky that Osterbeck's harassment included sexual advances, and the "Candy Man" comment. (Id.)

On January 25 and January 26, 2021, Jerald Rushing, a VA Employee and Labor Relations Investigator left a voice-message for Plaintiff to call him to discuss the harassment complaint Plaintiff lodged against Osterbeck, provided to him by Harassment Specialist Cindy Bukowsky. (Plaintiff's Declaration, ¶ 36, RE 48-2, Page ID # 892)

On January 25, 2021, Plaintiff learned that the head of VA Detroit Medical Center, Dr. Reeves failed to investigate Plaintiff's complaint of being subjected to harassment and retaliation by her supervisor. (Id. ¶ 37) Instead, Dr. Reeves responded as follows: "You should not try to have areas of conflict with your boss…You can only change your actions, **not theirs**." (Id. ¶ 37; VA Director Reeves Email Chain, RE 48-15, Page ID # 1052-1059) (Emphasis added) Not surprisingly, Dr. Reeves was involved in a VA

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 28

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

scandal and was subsequently fired. (Newspaper Reports, RE 48-16, Page ID # 1060-1078)

On January 25, 2021, Osterbeck made the decision to terminate Plaintiff's employment. (Plaintiff's Declaration, ¶ 38, RE 48-2, Page ID # 892) In an email to VA's Employee and Labor Relations Manager, Earl Lee, dated January 25, 2021, Osterbeck stated:

> I am requesting a probationary **removal** for SBU HRA Generalist Tara D. Miller She was hired in April 2020 as a Schedule A hire and she is serving a two year probationary
>
> * * *
>
> Unfortunately, Tara continues to have interpersonal issues with several of her co-workers. She is the common denominator in all interpersonal issues within the department. She causes tension, friction, and animosity for the entire team. **I cannot have this type of cancer in the small Detroit SBU unit**.**Again, I am requesting to terminate the employment of Tara D. Miller**[.] (Osterbeck's 1/25/2021 Request to Terminate Plaintiff, RE 39-16, Page ID # 668-669) (Emphasis added)

Plaintiff attested in her declaration that Osterbeck told Plaintiff she was being terminated because she was not a "satisfactory fit in the department." (Plaintiff's Declaration, ¶ 38, RE 48-2, Page ID # 892) Plaintiff was not a "satisfactory fit" because Plaintiff (1) rejected Osterbeck's sexual advances and sexual innuendos; (2) refused to "play the game" of accepting Osterbeck's sexual banter, including, wearing sexually inappropriate clothing worn by her co-workers Bethany and Thompson as they joyfully

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 29

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

and flirtatiously "played the game;" (3) complained about Osterbeck's hostile work environment based upon her sex, age and disability; (4) complained to higher authorities about Osterbeck's retaliation against Plaintiff for rejecting and refusing to participate in Osterbeck's sexual advances, sexual innuendos and sexual banter like harassing her co-workers, Bethany and Thompson; (5) complained about Osterbeck's denial of medical leave benefits she was entitled as a disabled veteran; (6) repeatedly protested Osterbeck's refusal to discipline Erica Bethany who consistently arrived late for work; and (7) was a disabled veteran who suffered PTSD due to Military Sexual Trauma (MST) which Osterbeck consistently mocked, ridiculed, and demeaned Plaintiff's duty-connected disability. (Id. Page ID # 886-897) In other words, on **January 25, 2021**, Eric Osterbeck established the *unlawful* basis for terminating Tara Miller's employment. (Id.)

On January 28, 2021, one day *after* Plaintiff complained about Osterbeck's continued discriminatory and retaliatory treatment to VA's Harassment Specialist, Cindy Bukowsky. (Id. ¶ 40) **Osterbeck sent another e-mail to Employee and Labor Relations Manager, Earl Lee requesting Plaintiff's termination for unsatisfactory job performance.** (Id. ¶ 41)

On January 29, 2021, Plaintiff learned from a VA customer Michael Jenkins that Eric Osterbeck and Angela Thompson had asked him and his wife Roberta Jenkins to make a false complaint against Plaintiff, which they refused to do. (Id. ¶ 42; Jenkins Text, RE 48-17, Page ID # 1079-1080)

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

On February 2, 2021, while Osterbeck was still waiting to see if his decision to terminate Plaintiff had been approved, he received a letter from Labor Management representative Jerold Rushing, informing Osterbeck that he was under investigation for a harassment complaint made against him by Plaintiff. (Plaintiff's Declaration, ¶ 42, RE 48-2, Page ID # 893; Rushing Investigation of Osterbeck Memorandum, RE 48-18, Page ID # 1081-1082) Rushing testified that such employee complaints against management are taken seriously and could result in termination. (Rushing Dep. RE 48-19, Page ID # 1084-1085)

While the investigation of Osterbeck was pending, his supervisor, Erica Gonzales stated in a letter addressed to Plaintiff dated February 19, 2021, that he had approved ***Osterbeck's decision to terminate her employment***. (Plaintiff's Declaration, ¶ 43, RE 48-2, Page ID # 893; Gonzales' Approval of Termination Letter, RE 39-17, Page ID # 670-672) Gonzales stated it was for "failure to follow direction." (Id.) The letter stated that Plaintiff had until February 24, 2021 to "clear the facility" and pay any indebtedness owed to the VA. (Id.) The letter also informed Plaintiff of her right to appeal the termination. (Id.) The reason is not true. (Plaintiff's Declaration, ¶ 43, RE 48-2, Page ID # 893-894) No other reason was given for Gonzales' "approval" of Osterbeck's decision to terminate Plaintiff's employment. (Gonzales' Approval of Termination Letter, RE 39-17, Page ID # 670-672)

On February 24, 2021, Osterbeck handed Plaintiff the Gonzales' February 19, 2021 letter which he asked Plaintiff to sign. (Id. Page ID # 672) She refused to do so and

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 31

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

exited the building. (Id.) **Significantly, *nowhere* in the letter signed by Gonzales on February 24, 2021 does Gonzales state any other reason for his approval of Osterbeck's January 25, 2021 decision to terminate Plaintiff, other than Plaintiff's "failure to follow direction."**

Osterbeck immediately promoted Erica Bethany to Plaintiff's former G-7 Human Resources Generalists position. In other words, the substantially younger co-worker who told Plaintiff she "just had to play the game" by not rejecting Osterbeck's sexual advances, sexual innuendos and sexual banter was *rewarded* with a promotion from a G-6 to a G-7. (Plaintiff's Declaration, ¶ 49, RE 48-2, Page ID # 895)

On March 31, Plaintiff filed an EEO complaint of employment discrimination with the Defendant's Department of Veteran Affairs EEO office. (EEO Notice of Partial Acceptance of Plaintiff's Harassment/Discrimination Complaint, RE 39-21, Page ID # 678-680) The Defendant stated that "**We have determined your claim of harassment passes the severe or pervasive requirement for further processing. The above-identified events establish a pattern of conduct that could create a hostile work environment and/or that could interfere with the job performance of a reasonable person:**

> In assessing a hostile environment claim, the totality of the circumstances must be examined, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance and (5) there is a basis for imputing

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> liability to the employer.[] A hostile environment claim generally requires a showing of a pattern of denigrating conduct that unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment.[] **In determining whether harassment is sufficiently severe or pervasive to create a claim of hostile environment, the harasser's conduct is evaluated from the objective standpoint of a reasonable person. An objectively hostile or abusive work environment is created only when a reasonable person would find it hostile or abusive.** (Emphasis added)
>
> 5. **We have determined your claim of harassment passes the severe or pervasive requirement for further processing. The above-identified events establish a pattern of conduct that could create a hostile work environment and/or that could interfere with the job performance of a reasonable person.** (Id.) (Emphasis added)

Defendant ultimately denied Plaintiff's EEO complaint (Plaintiff's VA Discrimination Complaint), despite the fact that it was supported by substantial evidence, including, Plaintiff's affidavit, witness statements and psychiatric counselling records showing a worsening of Plaintiff's PTSD, Military Sexual Trauma (MST) and increased panic disorders. (Progress Notes RE 48-21, Page ID # 1091-1099), Psychiatric Disability Letters, RE 48-22, Page ID # 1100-1103; and Plaintiff's Declaration ¶ 51, RE 48-2, Page ID # 895-897)

## B. Relevant Procedural History

Plaintiff filed this lawsuit against Defendant for violating her rights against discrimination and retaliation under Title VII, ADEA and Rehabilitation Act. (Second

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 33

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Amended Complaint, RE-10, Page ID # 31-36) Defendant filed a motion for summary judgment that was supported by an affidavit from Eric Gonzales that contained after-acquired evidence: Gonzales assertion that he considered "Plaintiff's unauthorized access of personnel files," although the "reason" appears nowhere in his February 24, 2021 letter given to Plaintiff. (Defendant's Motion for Summary Judgment, RE 39, Page ID # 132-164).

Plaintiff filed a motion to amend her complaint to clarify that her disability claim was being brought under the Rehabilitation Act and attached a proposed third amended complaint which also sought to clarify the claims alleged under Title VII claim. (Plaintiff's Motion to file Third Amended Complaint, RE 41, Page ID # 705-714; Plaintiff's Proposed Third Amended Complaint, RE 41-1, Page ID # 715-722; Plaintiff's Deposition Excerpts, RE 41-2, Page ID # 723-727). Prior to the hearing on Defendant's motion for summary judgment, Plaintiff filed an emergency motion to *adjourn* the hearing on Defendant's motion for summary judgment until the court has decided Plaintiff's pending motion for leave to amend complaint. (Emergency Motion to Adjourn Notice of Hearing on Defendant's Motion for Summary Judgment, RE 43, Page ID # 729-732). The motion to adjourn was denied. (Dist. CT. Order Denying Motion to Adjourn Hearing, RE 44, Page ID # 756-757)

On June 11, 2025, the district court entered its opinion and order granting Defendant's motion for summary judgment that was supported by an affidavit from Eric Gonzales containing after-acquired evidence. (Dist. CT. Op. RE 51, Page ID # 1118-

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

1142) In that same opinion and order the district court denied Plaintiff's motion to file a third amended complaint, stating:

> "Because Defendant addressed the merits of Plaintiff's disability claim under the Rehabilitation Act, as did the court, the court finds that an amendment is not necessary. Plaintiff's disability claims are being dismissed for failure to meet the standard under the Rehabilitation Act, not because of a pleading error." (Id. Page ID # 1142)

Plaintiff timely filed a Notice of Appeal on June 11, 2025. (Notice of Appeal, RE 53, Page ID # 144-145)

## III. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805 (6th Cir. 2020). Summary judgment is inappropriate if there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). When evaluating a summaryjudgment grant, "[w]e must view all of the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor." *Willard*, 952 F.3d at 805–06. In doing so, we must leave to a jury "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts." Id. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 35

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## IV. SUMMARY ARGUMENT

The law for analyzing a motion for summary disposition is mandatory and precise. However, unfortunately, a culture has developed where the application of the law as applied to motion for summary dispositions, particularly motions claiming there is no genuine issue of material fact, rarely follows either the mandatory or precise requirements of the rule.

The reason that the law of motion for summary disposition is both mandatory and precise is because granting a motion for summary disposition destroys a serious right in this country—a litigant's constitutional right to a trial by jury. That is why the law, as written, imposes a heavy burden on the moving party. The burden requires the moving party to "specifically identify the issue" on which it claims there are no genuine issues of material fact. In other words, the movant *must* first identify the material fact on which is "undisputed."

At the summary judgment stage, the court determines whether there are genuine disputes of material fact that should go to a jury; it does not find facts. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). There is a genuine dispute of material fact if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The party moving for summary judgment carries the burden of showing the absence of a genuine dispute of material fact; if it satisfies that burden, the nonmoving party must show "specific facts that reveal a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* Fed. R. Civ. P. 56(c).

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson, supra* at 250.

The party bringing the motion first must explain why the record is so settled that no genuine issues of material fact exist by "identify[ing] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). ***Notably, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"*** *Alexander v. CareSource,* 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52) (Emphasis added)

In the case at bar, the district court misapplied the law governing summary judgment by (1) failing to draw all reasonable inferences in favor of Plaintiff; (2) failing to consider all the evidence in the light most favorable to Plaintiff; (3) ignoring evidence presented in Plaintiff's declaration and deposition testimony; and (3) making credibility

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 37

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

assessments and determinations in favor of the Defendant. In so doing, the district court erred as a matter of law, warranting reversal of the order granting summary judgment.

## V. ARGUMENT

### I

**Where the *original* decision to terminate Plaintiff was made on January 25, 2021, and where Defendant's motion for summary judgment was based upon evidence discovered *after* January 25, 2021, summary judgment was precluded under the *after-acquired evidence doctrine*, as a matter of law.**

In reviewing the granting of summary judgment by the district court, the Court reviews the decision de novo. That legal principle is especially determinative in the case at bar.

In *Mckennon, supra,* the U.S. Supreme Court *unanimously* held that in cases arising under the ADEA and similar employment discrimination statutes, courts should not consider evidence acquired by the employer after the "decision" to discharge an employee. Since the primary issue for purposes of liability in employment discrimination cases is the employer's "motive" for the discharge, and the employer could not be motivated by information not in its possession *at the time* of its decision, the Court reasoned that after-acquired evidence could not be relevant for the purposes of establishing liability. *Id.* at 358-60, 115 S. Ct. at 885.

In reversing summary judgment granted to the defendant on the question of liability, the *McKennon* Court stated:

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> We do question the legal conclusion reached by those courts that **after acquired evidence of wrongdoing which would have resulted in discharge bars employees from any relief under the ADEA. That ruling is incorrect**. *Id.* at 356
>
> * * *
>
> McKennon's misconduct was not discovered until after she had been fired. **The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason**. Mixed-motive cases are inapposite here, except to the important extent they underscore the necessity of **determining the employer's motives in ordering the discharge, an essential element in determining whether the employer violated the federal antidiscrimination law**. (Citations omitted) *Id.* at 359-360. (Emphasis added)

The Supreme Court in *Mckennon,* explicitly limited the use of after-acquired evidence to the remedial stage of litigation for the purpose of ensuring that the federal and state anti-discrimination statutes continue to function as effective devices for eradicating discrimination in employment. The reason for the *McKennon* Court's decision is to protect the enforcement of the federal anti-employment discrimination statutes. In providing guidance as how properly to apply after-acquired evidence in the remedial phase of the litigation, the *McKennon,* Court declared as a general rule that the after-acquired evidence could only be used to limit damages, not to absolve the employer of liability. That is because employment discrimination litigation seeks to determine the employer's "intent" *at the time* of its decision to terminate the employee. Evidence learned after the adverse decision was made could not have "motivated" the actual decision, and is therefore, not relevant to the issue of liability. Consistent with the

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

*McKennon*, decision such after-acquired evidence may be considered in determining the amount of damages—not to absolve the employer of all liability for a Title VII violation.

Importantly, *McKennon*, *supra,* has restored the focus in employment discrimination claims involving after-acquired evidence to the employer's "motive" at the time it decided to terminate the employee, and explicitly limited the after-acquired evidence to the remedial phase of the litigation. To allow an employer to use after-acquired evidence as a defense to liability, after being proven to have discriminated against an employee directly contradicts and undermines federal anti-discrimination statutes' goal of eradicating discrimination in employment. The *McKennon* Court made clear that after-acquired evidence could not be relevant for the purposes of establishing liability.

This Court's decision in *Bryson v. Regis Corporation*, 498 F.3d 561 (2007) is instructive on the use of after-acquired evidence as a shield against liability.

> But the situation is different when the plaintiff asserts a retaliation claim, as Bryson has done, **because retaliation claims turn on the employer's motive for discharging the plaintiff.** *Id.* at 508, 512 (stating that "the employer's motive is an integral part of the analysis" in retaliation claims). **Thus, we stated that, "in a retaliation case, after-acquired evidence of an employee's inability to return to work cannot be used to shield a defendant from liability, but should be considered in determining the appropriate remedy for the FMLA violation**. *" Id.* at 513. In other words, an employer who decides to terminate an employee before being notified that the plaintiff is incapable of returning to work at the conclusion of her leave cannot rely on evidence regarding the plaintiff's

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> ongoing medical condition to defeat an FMLA retaliation claim. (Emphasis added)

Thus, the first step in legally assessing the issue of after-acquired evidence is to determine the date the employee's supervisor made the "decision" to terminate her employment. The *focus* of the analysis is to determine whether the reason or "motive" for the decision was discriminatory or nondiscriminatory.

In the case at bar, it is undisputed that Eric Osterbeck's decision to terminate Plaintiff was made on January 25, 2021. The district court's opinion at page 7 stated:

> On January 25, 2021, **before he knew about Plaintiff's unauthorized access of personnel files, or Rushing's investigation,** Osterbeck recommended her termination. (Dist. CT. Order, RE 51, Page ID # 1124) (Emphasis added)

Thus, by Defendant's *own* admission, whatever "motive" Osterbeck had on January 25, 2021 to terminate Plaintiff, had absolutely nothing to do with the after-acquired evidence of "unauthorized access of personnel files" discovered on February 23, 2021.

The legal principle applied to this case is defined by the parochial term "cat's paw." *Marshall v. Rawlings Company, LLC,* 854 F.3d 368 (2017). In a "layered decision making process", the immediate supervisor determines the basis for termination. The Court stated:

> "[T]he term 'cat's-paw' refers to 'one used by another to accomplish his purposes.' In the employment

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 41

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> discrimination context, **<u>'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action</u>**." *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006) (citations omitted). (Emphasis added)

The Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), defined cat's paw liability as follows: "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and that if that act is a proximate cause of the ultimate employment action, then the employer is liable under the [Act]." Id. at 1194 (emphasis in original).

In the case at bar, Osterbeck's decision to terminate Plaintiff was approved by his supervisor, Eric Gonzales in a letter to Plaintiff dated February 19, 2021, giving Plaintiff until February 24, 2021 to clear the facility and pay any indebtedness owed to Defendant. The "cat's paw" is Gonzales' rubber stamp of Osterbeck's decision made on January 25, 2021 to terminate Tara Miller for the reasons stated in Osterbeck's letter requesting her termination.

Significantly, nowhere in Gonzales's letter signed on February 24, 2021 does he make any reference to "Plaintiff's unauthorized access to personnel files."

The law precluding the use of after-acquired evidence to *legitimize* a discriminatory adverse employment decision is clear, but was ignored or miscomprehended by the district court.

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Given the law above outlined, the district court was required to find that the question to be submitted to the jury on the issue of liability is whether Defendant's decision to terminate Plaintiff on January 25, 2021 was "motivated" by unlawful discrimination and retaliation. If Plaintiff prevails on the issue of liability, then the Defendant can use the after-acquired evidence as a defense to damages.

Because the evidence discovered on February 23, 2021, "cannot be used to shield from liability, but should be considered for determining the appropriate remedy," the grant of summary judgment on Plaintiff's claims brought under Title VII, ADEA and Rehabilitation Act, conflicts with the Supreme Court's decision in *McKennon, supra,* and therefore must be vacated and reversed.

## II

**The district court's failure to apply the current and applicable law for Title VII hostile work environment claims which abrogated the more difficult "significant" harm standard to requiring only "some" harm that worsen the working conditions requires reversal.**

In addition to the district court's misapplication of the Supreme Court's decision in *McKennon, supra,* the district court cited but failed to properly apply the new standard for establishing a hostile work environment claim pronounced by the U.S. Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-355; 144 S.C. 967; (2024), and followed by Sixth Circuit in *McNeal v. City of Blue Ash,* 117 F.4th 887, 904 (6th Cir. 2024).

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 43

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Defendant's motion for summary judgment was necessarily defective because it has no legal support under current law. In summary, by failing to cite to the district court the applicable law, Defendant's motion for summary judgment relies on a legal framework that is not relevant to Plaintiff's hostile work environment claim.

The bedrock of legal analysis is the use of legal precedent to set the basis for addressing the factual and legal perspectives as applies to the case at bar. Therefore, when the district court relies on a case to set the basis for its decision and misconstrues the legal precedent that is applicable to the facts and law, then the decision must be reversed.

The legal standard for hostile work environment claims has evolved, making it easier for employees to prove their claims. In *McNeal*, *supra,* the United States Court of Appeals for the Sixth Circuit clarified that employees no longer need to show "significant harm" to their job conditions. Instead, only "some harm" is required. This shift stems from the Supreme Court's decision in *Muldrow, supra,* which lowered the bar for proving adverse actions under workplace discrimination laws.

This change was pivotal for Gary McNeal, a 61-year-old police officer who alleged that his supervisors in the Blue Ash Police Department subjected him to excessive scrutiny and disproportionate discipline compared to younger officers. McNeal sued the department for age discrimination under the "ADEA", arguing that his age made him a target for unfair treatment. *His claims included frequent reprimands for minor infractions*

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

*and being assigned to a demeaning traffic study designed to humiliate him.* These cumulative actions, the Sixth Circuit held, met the new threshold for a hostile work environment.

In the case at bar, the district court cited and relied upon the Sixth Circuit's decision in *McNeal, supra,* but failed to abide by its legal principles in granting summary judgment on Plaintiff's Title VII hostile work environment claim. This misapplication necessarily taints the district court's decision making process. The district court stated:

> ("[O]ur circuit has repeatedly held that a retaliatory hostile work environment claim must include evidence that the harassment was severe or pervasive."); *McNeal v. City of Blue Ash,* 117 F.4th 887, 904 (6th Cir. 2024) (Dist. Ct. Order, RE 51, Page ID # 1139)

The district court then granted summary judgment on the grounds that the acts of harassment suffered by Plaintiff "do not qualify as severe and pervasive harassment." (Id. p. 23). In reaching this conclusion the district court ignored the 6th circuit case of *McNeal, supra,* where the Court, citing the Supreme Court's decision in *Muldrow, supra,* clarified the "severe and pervasive" standard as follows:

> Because hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims, ***Muldrow's* holding that Title VII does not require plaintiffs to show "significant" harm applies to both types of claims**. *Muldrow,* 601 U.S. at 355; *Crawford,* 96 F.3d at 834 ("The theoretical rationale for the doctrine is that sufficiently abusive harassment adversely affects a 'term, condition, or privilege' of employment within the meaning of Title VII." (quoting

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> *Ellison v. Brady*, 924 F.2d 872, 876 (9th Cir. 1991))). **Instead, the employer's discriminatory action—or, as is the case here, the work environment—needs to produce "some harm respecting an identifiable term or condition of employment**." Muldrow, 601 U.S. at 355. Thus, when we consider whether a hostile-work environment was severe or pervasive enough to violate Title VII, **we effectively ask whether it left an employee "worse off respecting employment terms or conditions."** Id. And "[b]ecause we rely on Title VII case law in the ADEA context," we apply the same standard here. *Milczak*, 102 F.4th at 787. (Emphasis added)
>
> * * *
>
> Thus, a jury could conclude that **McNeal was denied the discretion granted to other officers, qualifying as a "'disadvantageous' change in an employment term or condition."** *Muldrow,* 601 U.S. at 354 (quoting Oncale, 523 U.S. at 80). When considering the evidence in McNeal's favor, a reasonable jury could conclude that the conditions of McNeal's employment were altered. Because McNeal has demonstrated a genuine dispute of material fact as to the existence of an age-based hostile work environment, we reverse the district court's grant of summary judgment on this claim. (Emphasis added)

The Court explained that an adverse employment action can be impactful in two ways. It can cause a change in the terms or conditions of employment, but it can also be "deployed strategically as harassment" to add to the climate of hostility. The Court noted that an adverse employment action could support a hostile work environment claim if it was "weaponized as [a] tool[] of harassment" to further a hostile environment. As support for this third point, the court cited *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

(2002). There the High Court held that a hostile work environment claim is "based on the cumulative effect of individual acts" which "*may* not be actionable" on their own — but there is no requirement that the acts not be independently actionable. In summary, the court clarified that "[w]hether a given act contributes to a hostile work environment does not turn on whether that act might support a separate claim." Rather, for purposes of a hostile work environment claim, discrete adverse employment actions are allowed as evidentiary support, but only if the discrete actions "contribute to the alleged environment of harassment."

The district court's failure to apply the standard requiring the Plaintiff to governing hostile work environment claims as explicitly articulated by the Sixth Circuit *McNeal, supra,* to the facts at hand permeates the district court's decision making process. The district court also refused to accept the standard of analysis outlined by the U.S. Supreme Court in *Muldrow supra,* as stated in *McNeal, supra*, "the Court abrogated circuit court cases across the country that required plaintiffs to show a high level of harm to challenge a discriminatory transfer." *Id.* The *McNeal* Court citing *Muldrow, supra,* stated explicitly that the principle applies to Title VII cases and that "the statute requires only that a plaintiff show some harm respecting an identifiable term or condition of employment." *Id.*

> Crucially, the harm does **not have to be "significant" or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee**

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> **must exceed a heightened bar**." *Id.* **In short, the employment action is adverse if it leaves the employee "worse off respecting employment terms or conditions**." *Mc Neal, supra*. We thus recognize that *Muldrow* may displace prior cases from our circuit requiring disparate-treatment plaintiffs to show heightened levels of harm.[] Id. pp. 15-16) (Emphasis added)

The Sixth Circuit in *McNeal, supra,* in recognition of the Supreme Court's abrogation of the "heightened" standard, made clear that whether the Plaintiff presented sufficient evidence to show that the harassment left the Plaintiff "worse off respecting employment terms or conditions," was a question for the jury to resolve, not the Court:

> Thus, when we consider whether a hostile-work environment was severe or pervasive enough to violate Title VII, we effectively ask whether it left an employee "worse off respecting employment terms or conditions." *Id*…"**Whether harassment is sufficiently severe or pervasive to create an abusive work environment is 'quintessentially a question of fact**.'" *Crawford,* 96 F.3d at 835–36…**McNeal cites enough evidence for a reasonable juror to conclude he was subjected to a hostile work environment**. (Emphasis added)

In the case at bar, Plaintiff has submitted extensive evidence upon which a jury could reasonably find that Osterbeck's harassment in the form of discriminatory and retaliatory actions "deployed strategically as harassment" to add to the climate of hostility that left Plaintiff "worse off with respecting employment terms or conditions." *McNeal, supra.* Because a jury could reasonably find that Osterbeck's actions were "weaponized as [a] tool[] of harassment" to further his intent to create a hostile environment, summary judgment was precluded as a matter of law.

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Given the change of the legal framework, and the Defendant's failure to cite the current law, the degree of harm suffered by Plaintiff is "essentially a factual question" *McNeal, supra* that lies completely within the province of the jury. It is the jury that must assess the credibility of the respective witnesses. Said assessment is not subject to a motion for summary judgment.

Although the district court cited and relied upon *McNeal, supra*, the district court violated significant aspects of the required legal analysis. Said analysis is similar and consistent with the misapplication and misanalysis of *Mckennon, supra.*

To simply list the district court violations sets the basis for reversal of summary judgment. *Mc Neal, supra,* explained the following:

> (1) The question of whether the harassment is severe and pervasive is **"quintessentially a question of fact."** Therefore, the Defendant's motion for summary judgment carries an almost insurmountable burden to prove that all material facts are "undisputed."
>
> (2) In any analysis of a hostile work environment claim, the trial court must examine the entire picture. It is inappropriate to carve the work environment into a series of discrete acts and then measure the harm in each episode. **The trial court must view the "totality of the circumstances."**
>
> 3) In reviewing the "totality of circumstances" the trial court **must consider whether the actions taken unreasonably interfered with work performance**.
>
> 4) In opposing a motion for summary judgment, the plaintiff is not required to prove that the hostility seriously affected the psychological well-being of given the plaintiff, **only that the plaintiff is "worse off."**

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Based on this pattern of invalid legal analysis, the Court is constrained to vacate summary judgment. The district court failed to follow applicable law, and relied on law cited inappropriately by Defendant-Appellee. Under these circumstances, reversal is required, as a matter of law.

## III

**The district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under the Rehabilitation Act.**

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The final element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995).

The Rehabilitation Act forbids discrimination based on disability, and a plaintiff may prove a Rehabilitation Act violation through direct or indirect evidence. To establish a prima facie case, a plaintiff must show "(1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 50

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

by a nondisabled person or his position remained open." *Jones v. Potter*, 488 F.3d 397, 403-04 (6th Cir. 2007).

In the case at bar, Plaintiff presented evidence to meet each element to survive summary judgment. Plaintiff presented evidence upon which a jury could reasonably find that (1) Plaintiff was a disabled veteran; (2) Plaintiff was qualified for the job of HR Generalist G-7; (3) Plaintiff suffered an adverse action when Osterbeck denied to accommodate Plaintiff's request for a medical leave to attend a crisis appointment for treatment on December 17, 2020, denied Plaintiff the medical leave of absence benefit she was entitled to receive as a disabled veteran, and made the decision to terminate Plaintiff on January 25, 2021, just five weeks later, as a form of discrimination and retaliation in violation of the Rehabilitation Act; (4) Osterbeck knew when he hired Plaintiff is a Scheduled A disabled veteran and that she is a 70% service-connected disability for PTSD, and a history of MST (Military Sexual Trauma). (ECF 48-22, Pg.ID. 1101); (5) Plaintiff was replaced by Erica Bethany who did not have a disability.

Because Plaintiff presented a prima facie case of discrimination in violation of the Plaintiff's Rehabilitation Act, the district court reversibly erred in granting summary judgment.

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## IV

**The district court erred in finding, as a matter of law that Plaintiff failed to meet her burden of presenting a prima facie case of age discrimination under the ADEA.**

The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits employers from taking adverse employment actions against employees over the age of forty due to their age. 29 U.S.C. §§ 623(a), 631(a) (2018). To establish a prima facie case of age discrimination, a plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for the job; 3) she suffered an adverse employment action; and 4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Willard v. Huntington Ford, Inc.,* 952 F.3d 795, 808 (6th Cir. 2020) (age). "The plaintiff's burden to establish a prima facie case is light, one 'easily met' and 'not onerous.'" *Id.* (quoting *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 813 (6th Cir. 2011)). "The sole function of the prima facie stage of the burden-shifting framework is 'to raise a rebuttable presumption of discrimination by eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff],' such as the plaintiff is unqualified for the position or not a member of the protected group." *Cline v. Cath. Diocese of Toledo,* 206 F.3d 651, 660 (6th Cir. 2000).

In *Kean v. Brinker International, Inc.*, No. 24-5514 (6th Cir. June 17, 2025) the Court recently stated:

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> We agree with the district court that "the record is clear that Kean was over age 40 when he was terminated, that he was well qualified for his position, and that he was replaced by Bean, who was substantially younger."
>
> For these reasons, Kean has met his burden to establish a prima-facie claim of age discrimination.

In the case at bar, Plaintiff presented evidence of being over the age of 50 when she was terminated, that she was qualified for the job, and was replaced by Erica Bethany, who was substantially younger. Plaintiff also presented evidence in her declaration of Bethany being treated more favorably than Plaintiff during and throughout Plaintiff's employment, despite being assigned the same job duties by Osterbeck.

Therefore, the district court reversibly erred in finding that Plaintiff failed to present a prima facie case of age discrimination to survive summary judgment.

## V

**The district court erred in finding, as a matter of law, that Plaintiff failed to meet her burden of presenting a prima facie case of discrimination and retaliation under Title VII.**

In order to establish a prima facie case of unlawful retaliation, a plaintiff must show: 1) that she engaged in a Title VII-protected activity; 2) that her employer knew of that activity; 3) that the plaintiff experienced an adverse employment action; and 4) that a causal connection exists between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.,* 265, 265 F.3d 357, 363 (6th Cir. 2001) (citing *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). A causal connection is established by the presentation of evidence "sufficient to raise the inference

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 53

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted).

Here, Plaintiff presented evidence in her declaration that she engaged in protected activity when she complained about to Defendant about her supervisor, Eric Osterbeck subjecting Plaintiff to a hostile work environment in retaliation for rejecting about his sexual harassment and in retaliation for exercising her rights as a disabled veteran to the benefits she was entitled to receive. Plaintiff presented evidence showing that Osterbeck and other EEO representatives knew about her complaints. Plaintiff presented an abundance of evidence of the adverse employment actions, including, Osterbeck's decision to terminate her employment on January 25, 2021. That occurred just 5 weeks after Osterbeck retaliated against Plaintiff for exercising her right to the disabled veteran benefits she was entitled to receive on December 17, 2021, and less than 4 weeks after Plaintiff reported Osterbeck's sexual harassment and creation of a hostile work environment to Donald Scott a regional EEO VA representative on December 28, 2021.

Because the evidence presented in Plaintiff's declaration satisfied each element of a prima facie claim of retaliation, the district court reversibly erred in granting summary judgment on Plaintiff's Title VII claim.

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## VI

**Defendant's shifting reasons for terminating Plaintiff's employment creates a genuine issue of material fact on the question of pretext, precluding summary judgement, as a matter of law.**

The law in the Sixth Circuit precludes summary judgment where as in the case at bar, the employer provides "shifting reasons" to justify its termination of the employee. *See, Pierson v. Quad-Graphics Printing Corp et. al.*, 749 F.3d 530 (6th Cir. 2014). "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996) *am. on other grounds*, 97 F.3d 833 (6th Cir. 1997); *see also Edwards v. U.S. Postal Serv.*, 909 F.2d 320, 324 (8th Cir. 1990); *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132-33 (2d Cir. 1987).

In the case of *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002), the Sixth Circuit explained:

> Shifting justifications over time calls the credibility of those justifications into question. **By showing that the defendants' justification for firing him changed over time, [the plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination**. (Emphasis added)

*See also, Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) (finding that inconsistencies regarding which of two managers made the decision to fire an employee and which of the two offered justifications was the real reason for the decision create a genuine issue of material fact regarding pretext).

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

In finding that the trial court reversibly erred in granting summary judgment where the record showed *shifting* reasons for termination, the Court stated:

> Although it is possible that Lentz had Pierson's allegedly poor teamwork in mind when he initially selected him for termination, and that **both reasons played a role in Pierson's discharge, a reasonable jury could conclude that Lentz shifted the reasons for his decision over time**. **Such shifting justifications raise an inference that the proffered reasons are false and are pretext for discrimination**. (Emphasis added)
>
> * * *
>
> Any one of these issues, or all of them in combination, provide a jury with a basis to conclude **that poor performance was a pretextual justification for Gaglioti's firing**. (Emphasis added)

*See also, Peck v. Elyria Foundry Co.,* 2009 WL 2868831 (6th Cir. Sept. 8, 2009) (slip op.) (hiring decision maker's logically contradictory reasons for not hiring claimant held to be evidence of pretext)

In *Pierson, supra,* the Court stated:

> Hence, we look not only to whether changes in an employer's rationale have occurred, **but to whether the circumstances could permit a rational factfinder to conclude that these changes are indicative that the currently-proffered explanation is false**. *See Reeves,* 530 U.S. at 148-49 ("Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include . . . the probative value of the proof that the employer's explanation is false."). **Brookdale's many changes in its explanation for Eades's termination may or may not lead to an ultimate conclusion that it retaliated against Eades for engaging in a protected activity, but certainly they show a genuine issue of material fact that should preclude summary judgment**. *See Asmo v. Keane, Inc.,*

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

> 471 F.3d 588, 596 (6th Cir. 2006) (inconsistency between what employer told plaintiff and what it asserted in lawsuits as its reasons for terminating plaintiff's employment "is suspicious and is evidence of pretext"). (Emphasis added)

In *Gaglioti v. Levin Group, Inc.,* 508 F. Appx 476 (6th Cir. 2012), the Court stated:

> Again, the question is not whether there are ways to square these two facts, **but whether a juror could reasonably conclude that this inconsistency is enough to discredit Levin Group's account**. A juror could see two incompatible versions of the amount of work needed by the company, and conclude that this justification is pretextual. (Emphasis added)

Similarly, the Court stated in *Wyatt v. Nissan N. Am. Inc.,* 999 F.3d 400 (6th Cir. 2021):

> In addition, the record also contains conflicting evidence as to why Mullen asked Davis to remove Wyatt from the project...**The suspicious timing coupled with the inconsistent explanations make it such that a trier-of-fact would need to weigh the evidence and make credibility determinations to decide whether Wyatt's performance on the project actually was poor and actually motivated her removal or whether Mullen retaliated against her for opposing his sexual advances**. *See Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 320 (6th Cir. 2019) (***holding that to survive summary judgment an employee does not have to prove pretext but only needs to "create a genuine issue as to whether the rationale is pretextual*"** (quoting Whitfield v. Tennessee, 639 F.3d 253, 260 (6th Cir. 2011))). **On this record, a reasonable jury could find that Nissan's articulated reason for removing Wyatt was pretextual**. (Emphasis added)

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

Given the law above outlined, the question to be submitted to the jury on the issue of liability, is whether Defendant's decision to terminate Plaintiff that was *made on February 19, 2021.* If so, was it "motivated" by Plaintiff's alleged "failure to follow direction" or was Defendant's decision to terminate Plaintiff *motivated* by alleged unlawful discrimination and/or retaliation.

It lies within the sole province of the jury to assess the credibility of Defendant's witnesses to determine whether Defendant's "shifting reasons" for termination represented an attempt to disguise the real reason which represented unlawful discrimination and/or retaliation.

## VI. <u>CONCLUSION</u>

The decision to grant summary judgment is a legal decision with extreme legal consequences; that is the denial of a right to trial by a jury.

In the case at bar, the district court granted Defendant's motion for summary judgment relying on a misinterpretation of the cases applicable to Defendant's motion. The two cases that were misapplied by the district court in granting summary judgment are: *McKennon, supra, and McNeal supra.*

Where the Defendant relied on after-acquired evidence obtained on February 23, 2021, the decision to fire Tara Miller occurred on January 25, 2021. The *McKennon* case specifically requires the trial courts to focus on the *date* that the adverse employment decision to terminate Tara Miller was made. That date was January 25, 2021, one month before the after-acquired evidence was discovered. As a result, the district court

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

committed reversible legal error in granting Defendant's improperly supported motion for summary judgment.

The basis for the district court's decision to grant summary judgment on Plaintiff's hostile work environment claim depended on a correct legal analysis of the Sixth Circuit's decision in *McNeal, supra*, the district court failed to do so. The standard utilized by the district court required proof of substantial harm to Plaintiff's work environment and an analysis of specific instances of harassment without considering the cumulative effect of the adverse actions of harassment causing the hostile work environment.

The legal and factual errors committed by the district court command the reversal of the district court's decision granting summary judgment, and the case remanded for trial.

## VII. RELIEF REQUESTED

For the foregoing reasons, Plaintiff-Appellant, Tara Miller, respectfully requests that the district court's order granting summary judgment be vacated and reversed and the case remanded for trial by jury.

Respectfully submitted,
By: *D. Rick Martin*
DEWEY RICK MARTIN (P-42484)
13900 Woodward Avenue
Highland Park, Michigan 48203
(248) 872-7907
Attorneys for Plaintiff
drickmartin@glottaassociates.com

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 59

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,770 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

/s/ D. Rick Martin December 5, 2025

D. Rick Martin
Attorney for Appellant

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

## CERTIFICATE OF SERVICE

I, D. Rick Martin, hereby certify that on December 5, 2025, I electronically filed Plaintiff-Appellant's Appeal Brief with the Clerk of the Court using the ECF system which will send notification to all attorneys on file.

Respectfully submitted,

By: /s/D. Rick Martin

D. RICK MARTIN (P42484)
13900 Woodward Ave.
Highland Park, MI 48203
(248) 872-7907
Attorney for Plaintiff-Appellant
drickmartin@glottaassociates.com

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS
**Pursuant to Sixth Circuit Rule 30(b)**

The following filings from the district court's record are relevant documents:

| Document Description | Docket Entry | Page ID |
|---|---|---|
| Second Amended Complaint | 10 | 31-36 |
| Dist. CT. Order Granting SJ | 51 | 1118-1142 |
| Notice of Appeal | 53 | 1144-1145 |
| Osterbeck's 1/25/2021 Request to Terminate Plaintiff | 39-16 | 668-669 |
| Plaintiff's Declaration | 48-2 | 880-898 |
| Re-enlistment Certificates | 48-3 | 899-902 |
| Military Mental Health Article | 48-4 | 903-915 |
| Schedule A-Disabled Veteran Letter | 48-5 | 916 |
| Plaintiff's Resume | 48-6 | 917-920 |
| Candy Man (Aguilera Song) | 48-7 | 925 |
| Psychiatric Disability Letters | 48-22, | 1100-1104 |
| Osterbeck Deposition. | 48-8, | 928-930, 950-962 |
| Osterbeck Warning of Disciplinary Action to Bethany | 48-9 | 966-982 |
| Bethany, Deposition | 48-10 | 984, 988 |
| Plaintiff's EEO Affidavit | 48-11 | 989-1006 |
| Disability Leave Emails | 48-12 | 1031-1038 |

Case: 25-1544 Document: 24 Filed: 12/05/2025 Page: 62

LAW OFFICES
D. RICK MARTIN, ESQ.
220 BAGLEY• SUITE 8080 DETROIT MI 48226-1409• (313) 963-1320

| | | |
|---|---|---|
| Scott Email | 48-13 | 1039-1040 |
| Bukowsky Email Chain | 48-14 | 1041-1051 |
| VA Director Reeves Email Chain | 48-15 | 1052-1059 |
| Newspaper Reports | 48-16 | 1060-1078 |
| Jenkins Text | 48-17 | 1079-1080 |
| Rushing Investigation of Osterbeck Memorandum | 48-18 | 1081-1082 |
| Gonzales' Approval of Termination Letter | 39-17 | 670-672 |
| EEO Notice of Partial Acceptance of Plaintiff's Harassment/ Discrimination Complaint | 39-21 | 678-680 |
| Progress Notes | 48-21 | 1091-1099 |
| Defendant's Motion for Summary Judgment | 39 | 132-164 |
| Plaintiff's Motion to file Third Amended Complaint | 41 | 705-714 |
| Plaintiff's Proposed Third Amended Complaint | 41-1 | 715-722 |
| Plaintiff's Deposition Excerpts | 41-2 | 723-727 |
| Emergency Motion to Adjourn Notice of Hearing on MSJ | 43 | 729-732 |
| Dist. CT. Order Denying Motion to Adjourn Hearing | 44 | 756-757 |