**No. 25-1544**

In the United States Court of Appeals
for the Sixth Circuit

# Tara Miller,

Plaintiff - Appellant,

v.

# U.S. Department of Veterans Affairs; Secretary of the United States Department of Veterans Affairs, Douglas Collins,

Defendants - Appellees.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 22-12865 (Hon. F. Kay Behm)

## Brief for Defendants - Appellees

Jerome F. Gorgon Jr.
United States Attorney

Christopher Doyle
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9595

## Table of Contents

Table of Authorities ........ iii

Oral Argument Is Unnecessary ........ vi

Introduction ........ 1

Issues Presented ........ 3

Statement of the Case ........ 4

A. Miller began working for the VA as a probationary employee. ........ 4

B. Miller clashed with her coworkers ........ 5

C. Miller ignored basic instructions, and her supervisor recommended that the VA end her probationary employment. ........ 7

D. The VA learned that Miller had wrongfully accessed her coworkers' personnel files and terminated her probationary employment. ........ 9

E. Miller complained about her coworkers and supervisors, but she engaged in no relevant protected activity until after her termination. ........ 10

F. The district court granted summary judgment for the VA, and Miller appealed. ........ 13

Summary of the Argument ........ 16

Argument ........ 18

I. Miller failed to make a prima facie case of discrimination. ........ 18

II. Miller failed to make a prima facie case of retaliation ........ 23

III. Miller's pretext argument is factually baseless and legally irrelevant. .......... 25

IV. Miller failed to establish that she was subjected to a hostile work environment. .......... 27

Conclusion .......... 31

Certificate of Compliance with Rule 32(a) .......... 32

Certificate of Service .......... 33

Relevant District Court Documents .......... 34

# Table of Authorities

**Cases**

*Blizzard v. Marion Tech. Coll.*,
698 F.3d 275 (6th Cir. 2012) ........ 23

*Burnett v. Tyco Corp.*,
203 F.3d 980 (6th Cir. 2000) ........ 30

*Chattman v. Toho Tenax Am., Inc.*,
686 F.3d 339 (6th Cir. 2012) ........ 26, 27

*Clark v. United Parcel Service*,
400 F.3d 341 (6th Cir. 2005) ........ 30

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) ........ 21

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ........ 29

*Geiger v. Tower Auto.*,
579 F.3d 614 (6th Cir. 2009) ........ 20

*Gribcheck v. Runyon*,
245 F.3d 547 (6th Cir. 2001) ........ 23

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ........ 19

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17, (1993) ........ 29

*Keever v. City of Middletown*,
145 F.3d 809 (6th Cir. 1998) ........ 29, 31

*Kellar v. Yunion*,
157 F. 4th 855 (6th Cir. 2025) ........ 29, 30, 31

*Kraus v. Sobel Corrugated Containers, Inc.*,
915 F.2d 227 (6th Cir. 1990) ........ 19

*Kreipke v. Wayne State Univ.*,
807 F.3d 768 (6th Cir. 2015)........................................................22, 26

*Lowe v. Walbro LLC*,
972 F.3d 827 (6th Cir. 2020)............................................................17

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)............................................................ 18, 19, 20

*McNeal v. City of Blue Ash*,
117 F.4th 887 (6th Cir. 2024) .......................................................28, 29

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997)........................................................20, 24

*Mitchell v. Toledo Hosp.*,
964 F.2d 577 (6th Cir. 1992)........................................................21, 22

*Morris v. Oldham County Fiscal Court*,
201 F.3d 784 (6th Cir. 2000)............................................................30

*Muldrow v. City of St. Louis,*
601 U.S. 346 (2024)...................................................................28, 29

*Phelps v. Yale Sec., Inc.*,
986 F.2d 1020 (6th Cir. 1993)..........................................................19

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011).......................................................................26

*Texas Dep't of Cmty. Affs. v. Burdine*,
450 U.S. 248 (1981).......................................................................19

*Trepka v. Bd. of Educ.*,
28 F. App'x 455 (6th Cir. 2002)........................................................31

*University of Texas Sw. Med. Ctr. v. Nasser*,
570 U.S. 338 (2013).......................................................................23

*Warf v. U.S. Dep't of Veterans,*
*Affs.*, 713 F.3d 874 (6th Cir. 2013) ...................................................23

*Younis v. Pinnacle Airlines, Inc.*,
610 F.3d 359 (6th Cir. 2010) .................................................. 18

**Statutes**

29 U.S.C. § 623(a)(1) .................................................. 19

29 U.S.C. § 623(d) .................................................. 23

29 U.S.C. § 791(g) .................................................. 20, 27

29 U.S.C. §§ 701 .................................................. 20, 27

42 U.S.C. § 2000e-2(a)(1) .................................................. 18

42 U.S.C. § 2000e-3(a) .................................................. 23

42 U.S.C. §§ 12111 .................................................. 20, 27

42 U.S.C. §§ 12201–04 .................................................. 20, 27

42 U.S.C. §§ 12210 .................................................. 20, 27

**Rules**

Fed. R. App. P. 34(a)(2)(C) .................................................. v

## Oral Argument Is Unnecessary

Oral argument is unnecessary because the briefs adequately address this straightforward review of the district court's well-reasoned order granting summary judgment. Fed. R. App. P. 34(a)(2)(C).

## Introduction

The Department of Veterans Affairs (VA) terminated Tara Miller's probationary employment because she clashed with coworkers, disregarded her supervisor's basic instructions, and wrongfully accessed her coworkers' personnel files.

Without record support, Miller contends that the VA discriminated against her based on age, sex, and disability status and retaliated against her for prior complaints about her supervisor and coworkers. Betraying that lack of evidentiary support, Miller did not even attempt to make a prima facie case of discrimination or retaliation in response to the VA's motion for summary judgment. The district court correctly granted summary judgment on that basis alone.

Given the failure to make a prima facie case of discrimination or retaliation, this Court does not need to consider Miller's pretext arguments, including the allegation that she was terminated before the VA learned that she hacked into her coworkers' personnel files. That argument is baseless because, as Miller herself testified, she was terminated on February 24, 2021, one day after the VA learned that she wrongfully accessed VA personnel files.

Finally, Miller failed to establish that she was subjected to a hostile work environment. The district court properly determined that the purported sexual advances—which were either vague or objectively innocuous—and alleged disability-based hostility cited by Miller were not severe or pervasive enough to affect a term or condition of her employment.

The district court's grant of summary judgment should be affirmed.

## Issues Presented

I. Did the district court correctly determine that Miller failed to make a prima facie case that the VA terminated her because of her race, sex, age, or disability status?

II. Did the district court accurately determine that Miller failed to make a prima facie case that the VA terminated her because of protected activity under Title VII, the Age Discrimination in Employment Act, or the Rehabilitation Act?

III. Did the district court properly determine that Miller's claims of pretext were not relevant and factually unsupported?

IV. Did the district court correctly hold that Miller failed to establish that she was subjected to a hostile work environment based on her race, sex, age, or disability status?

## Statement of the Case

### A. Miller began working for the VA as a probationary employee.

In April 2020, Tara Miller began working for the VA as a Human Resources Assistant at the John D. Dingell Medical Center in Detroit, Michigan. (R. 39-2: Deposition of Miller, 189–90). Miller was hired to the position subject to a two-year probationary period. (R. 39-3: Hiring Form, 315). Miller is an African American woman. (R. 39-4: Formal Complaint, 316). She was born in July 1969, making her 50 years old when she was hired. (*Id.*). Miller became employed with the VA under a non-competitive hiring process for individuals with disabilities (often referred to as Schedule A). (R. 39-2: Deposition of Miller, 226).

Eric Osterbeck, a senior manager in the HR department, selected Miller for the position and became her supervisor. (*Id.* at 189–90). Osterbeck was also hired under Schedule A, a non-competitive hiring process for persons with disabilities. (R. 39-5: Deposition of Osterbeck, 456–59). A person hired under Schedule A still needs to be fully qualified for the position sought. (*Id.*). Osterbeck knew that Miller was hired under Schedule A, but he didn't learn what specific disability she had. (*Id.*).

Miller alleges that, soon after she started at the VA, she had a meeting in Osterbeck's office during which he explained that employees could come into his office to grab snacks or candy and then said other employees call him "the candy man." (R. 39-2: Deposition of Miller, 205–209). Osterbeck denied telling Miller that anyone calls him "the candy man," and he didn't know Miller made such an allegation until after she was terminated. (R. 39-5: Deposition of Osterbeck, 427–29, 501).

### B. Miller clashed with her coworkers.

Miller was expected to work with another HR Assistant, Erica Bethany, who is also an African American woman. (R. 39-2: Deposition of Miller, 271). Miller does not know whether Bethany has a disability. (*Id*. at 281). Bethany started working for the VA in 2007. (R. 39-6: Deposition of Bethany, 559). She transferred to the HR Assistant position in May 2020. (R. 39-7: Bethany Hiring Form, 584). Bethany was hired to the HR Assistant position at the GS-06 level, but there was "known promotion potential" to the "full performance level" of the position, GS-07. (*Id.*). Unlike Miller, Bethany was not a probationary employee. (*Id.*).

Miller and Bethany had a difficult working relationship. (R. 39-5: Deposition of Osterbeck, 418). Miller took issue with Bethany's harsh attitude and use of foul language, but she did not think Bethany was discriminating against her based on age, sex, race, or disability status. (R. 39-2: Deposition of Miller, 198–99).

After several months, the interpersonal tension between Miller and Bethany progressed to the point that Miller wrote a "Report of Contact" documenting her disputes with Bethany and stating that she no longer wanted to "engage in any form of communication with" Bethany. (R.39-8: Report of Contact, 585). Again, the documented problems had nothing to do with Miller's age, race, sex, or disability status. (*Id.*).

Similarly, Miller had trouble working with Angela Thompson, a more experienced employee who was tasked with training Miller on certain HR duties. (R. 39-5: Deposition of Osterbeck, 383–84, 451–52; R. 39-2: Deposition of Miller, 203–204). Thompson is an African American woman close in age to Miller. (R. 39-9: Thompson Hiring Form, 586). Miller's acrimony with Thompson eventually interfered with her work performance. For example, after Thompson conducted a training session

with Miller, Bethany, and a newer employee named Shavon Render, Miller asked Render to explain everything that Thompson taught them during the training. (R. 39-10: Deposition of Render, 608).

### C. Miller ignored basic instructions, and her supervisor recommended that the VA end her probationary employment.

In January 2021, Osterbeck instructed Miller not to send unnecessary email messages, including reply-all responses to large group email messages because "everyone receives way too many emails." (R. 39-15: January 20 Email, 667). Days after receiving that instruction, Miller replied all to a mass email from Osterbeck's supervisor Eric Gonzales. (*Id.*). Miller's email appeared to be the type of unnecessary communication that Osterbeck asked her to curtail—a reply-all message in response to a mass email generally praising the valuable work of VA employees. (*Id.*; R. 39-5: Deposition of Osterbeck, 454). When Osterbeck reminded Miller of his instruction about unnecessary reply-all emails, Miller reacted indignantly, stating: "Mr. Osterbeck, with all due respect to you: it is my understanding that when an electronic communication is sent to a 'said person, or personnel' that out of courtesy the recipient may respond in a

professional manner." (R. 39-15: January 20 Email, 667). Miller ended that message with a sarcastic apology to Osterbeck, writing: "My apologies, [sic] if I offended you by shar(ing) [sic] my voice of approval." (*Id.*).

After Miller objected to Osterbeck's direction about sending reply-all emails, Osterbeck recommended that the VA terminate Miller's probationary employment. (R. 39-16: January 25 Email, 668). He began that process by sending a request and supporting materials to Earl Lee in the VA's employee-relations department. (*Id.*). In that request, Osterbeck cited the reply-all email incident, as well Miller's failure to follow instructions regarding employee health benefits and the "interpersonal issues" between Miller and her coworkers—with respect to which, Miller was the "common denominator." (*Id.*).

Osterbeck did not have authority to terminate Miller, so on or around February 19, 2021, the termination request was forwarded to Osterbeck's supervisor and Miller's second-line supervisor, Eric Gonzales. (R. 39-5: Deposition of Osterbeck, 407; R. 39-18: Declaration of Gonzales, 673–74).

### D. The VA learned that Miller had wrongfully accessed her coworkers' personnel files and terminated her probationary employment.

While the termination request was pending, Angela Thompson told Osterbeck that she was concerned that Miller might have accessed her personnel file because Miller addressed Thompson as "Angela Denise Thompson," (i.e., using her middle name). (R. 39-5: Deposition of Osterbeck, 433; R. 39-19: February 23 Email, 675). Osterbeck then obtained an access log from the personnel-file system, which confirmed that Miller had accessed several of her coworkers' files. (R. 39-20: Wrongful Access Report, 676–77).

The next day, Eric Gonzales approved Miller's termination based on her failure to follow directions and unauthorized access of coworkers' personnel files. (R. 39-17: Termination Letter, 670–72; R. 39-18: Declaration of Gonzales, 673–74).

Miller does not dispute that she accessed the personnel files of Erica Bethany, Angela Thompson, and Eric Osterbeck. (R. 39-2: Deposition of Miller, 256–66). When an employee seeks to access personnel files, the VA's software system first displays a warning screen explaining that users can access the system only for authorized, official

business purposes. (*Id.* at 266–67; R. 39-5: Deposition of Osterbeck, 444). Although Miller had access to the software system containing her coworkers' personnel files because she was an HR employee, she had no legitimate reason to view those files. (R. 39-2: Deposition of Miller, 268).

### E. Miller complained about her coworkers and supervisors, but she engaged in no relevant protected activity until after her termination.

During her tenure with the VA, Miller often complained about disputes with her coworkers and apparent favoritism by her supervisor. But these complaints did not arise from alleged discrimination based on Miller's age, sex, race, or disability status.

In January 2021, Osterbeck met with Miller to address a dispute between Miller and Angela Thompson. (R. 39-2: Deposition of Miller, 228–29). Miller asked Osterbeck to arrange a mediation with Thompson. (*Id.*; R. 39-11: January 13 Email, 631). Although the mediation was arranged by a representative from the EEO department, Zenia Berry, it arose from a dispute about work performance and "disrespectful comments," not from allegations of discrimination based on age, sex, race, or disability status. (R. 39-12: January 7 Email to Berry, 632–33). In this regard, Berry testified that Miller's complaints

did not appear to arise from alleged discrimination based on race, age, sex, or disability status. (R. 39-13: Deposition of Berry, 652–53). Instead, Miller was alleging generally that “her work was being overly scrutinized by her coworkers.” (*Id.*). Similarly, Berry testified that Miller alleged Osterbeck was “biased” toward her coworkers in a general sense, as opposed to any bias based on race, sex, age, or disability status. (*Id.* at 653). Miller knew that this mediation did not arise from a discrimination complaint against Osterbeck because she believed that Osterbeck came to the mediation to support Thompson. (R. 39-14: January 27 Email, 664–66).

Miller made similarly vague complaints of harassment to Cindy Bukowsky and Jerald Rushing. In communications with Bukowsky, Miller alleged generally that she “was called into [her] supervisor’s offices it seems weekly” about “something that [she] ha[d] done wrong” and reprimanded for “throwing [her] co-workers under the bus.” (R. 48-14: January 22 Email, 1045). Those communications do not reflect that Miller was complaining about discrimination based on her age, race, sex, or disability status. (*Id.* at 1043–48). In this regard, Rushing had

no recollection of the substance of Miller's complaints. (R. 48-19: Deposition of Rushing, 1085).

Miller also asserts that she complained about alleged discrimination to Pamela Reeves and Donald Scott, but they were not appropriate contacts for such complaints, and there is no evidence that Miller's supervisors learned of any such complaint before deciding to end her probationary employment. (R. 39-5: Deposition of Osterbeck, 423–24). Reeves was not in Miller's chain of command. (*Id.*). Accordingly, in response to a January 2021 letter from Miller, Reeves simply told Miller that she should "try not to have areas of conflict with [her] boss." (R. 48-14: January 25 Email, 1049). There is no indication that Reeves forwarded the letter to Osterbeck, and Osterbeck testified that he did not learn of it until after Miller was terminated. (R. 39-5: Deposition of Osterbeck, 406, 426–28). Similarly, Miller's supervisors had no knowledge of Miller's complaints to Donald Scott. (*Id.* at 427). And Scott was not a proper contact for such complaints because he worked for the VA in Florida. (R. 39-2: Deposition of Miller, 210–11; R. 48-13: December 28, 2020 Email, 1039).

Over a month after she was terminated, Miller filed an EEO complaint alleging that she was discriminated against based on her age, race, sex, and disability status, and that she was subjected to sexual harassment. (R. 39-4: Formal Complaint, 316; R. 39-21: Notice of Acceptance, 678–80). The VA ultimately denied Miller's claim, concluding that she failed to establish that she was discriminated against or subjected to a hostile work environment. (R. 39-22: Final Agency Decision, 698).

### F. The district court granted summary judgment for the VA, and Miller appealed.

Miller then filed a complaint in federal district court. (R. 10: Second Amended Complaint, 31–36). After discovery, the VA moved for summary judgment. (R. 39: Motion for Summary Judgment, 132–63). Miller filed a response (R. 48: Response, 832–75), and the VA filed a reply. (R. 50: Reply, 1107–16).

After oral argument, the district court granted summary judgment for the VA. (R. 51: Order, 1118–42; R. 52: Judgment, 1143). The district court determined that Miller failed to make a prima facie case of discrimination under Title VII, the Age Discrimination in

Employment Act, or the Rehabilitation Act. (R. 51: Order, 1130–35). The court noted Miller's contention that she was treated less favorably than Erica Bethany. (*Id.* at 1133.) But because Miller failed to address the fact that Bethany "was not a probationary employee and did not access others' personnel files or fail to follow her supervisor's direction" and did not address the other elements of a prima facie discrimination claim, the court concluded that Miller "abandoned each of her discrimination claims." (*Id.*). In the alternative, the court also considered and rejected Miller's pretext claim, finding that the VA learned of Miller's wrongful personnel-file access before she was terminated, and that "[a] reasonable jury could not find that Defendant's reasons for her termination were pretextual." (*Id.* at 1134–35).

The district court similarly determined that Miller failed to make a prima facie claim of retaliation. (*Id.* at 1136). At the outset, the court noted that Miller "fail[ed] to address the elements of a prima facie case of retaliation, which alone precludes her claim." (*Id.*). But the court also found that there was no evidence that Miller engaged in protected

conduct, that her supervisors knew of any such conduct, or that any protected complaint was the basis for her termination. (*Id.* at 1137–38).

Finally, the district court determined that Miller failed to establish that she was subjected to a hostile work environment. (*Id.* at 1139–40). The court concluded that the conduct Miller characterized as sexual harassment was not severe or pervasive enough to affect a term or condition of her employment. (*Id.*). The same was true for Miller's allegations about disability-based hostility. (*Id.*). The court also noted that Miller's allegations about hostility from her coworkers did "not appear connected to any protected characteristic, such as sex, race, age, or disability" and therefore could not support her claims under Title VII, the Rehabilitation Act, or the Age Discrimination in Employment Act. (*Id.* at 1140). Ultimately, the record showed that Miller's hostile work environment allegations were "vague, conclusory, or describe[d] events that were not objectively offensive or discriminatory." (*Id.* at 1141).

Miller timely filed a notice of appeal from the order granting summary judgment. (R. 53: Notice of Appeal, 1144).

## Summary of the Argument

The VA terminated Miller's probationary employment because she refused to follow her supervisor's basic instructions and hacked into her coworkers' personnel files, not because of discrimination or retaliation. As the district court correctly found, Miller failed to make a prima facie case of Title VII discrimination based on her race, sex, age, or disability status.

The district court accurately determined that Miller failed to make a prima facie retaliation case that the VA terminated her because of protected activity under Title VII, the Age Discrimination in Employment Act, or the Rehabilitation Act.

Miller's claims of pretext—that she was terminated before the VA learned that she hacked into her coworkers' personnel files and that she had complained about her supervisor and coworkers—were not relevant and were factually unsupported.

The district court also correctly held that Miller failed to establish that she was subjected to a hostile work environment based on her race, sex, age, or disability status because most of the alleged hostility had no connection to Miller's race, age, or disability status and because the

alleged sex-based and disability-based hostility was objectively not severe or pervasive enough to affect a term or condition of employment.

On de novo review, this Court should affirm the district court's grant of summary judgment. *Lowe v. Walbro LLC*, 972 F.3d 827, 831 (6th Cir. 2020).

## Argument

### I. Miller failed to make a prima facie case of discrimination.

The district court properly determined that Miller failed to make a prima facie case of discrimination based on age, race, sex, or disability status.

Title VII prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as in this case, there is no direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). To establish a claim of discrimination by circumstantial evidence, a plaintiff must demonstrate (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that a similarly situated employee outside the protected class or classes was treated more favorably. *Id*. at 363 (citing *McDonnell Douglas*, 411 U.S. 792 at 802). If the plaintiff establishes a prima facie

case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

Similarly, the Age Discrimination in Employment Act prohibits employers from taking adverse employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 299–30 (6th Cir. 1990)). The plaintiff may prove such but-for causation using either direct or circumstantial evidence. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). To analyze ADEA claims based on circumstantial

evidence, this Court applies the *McDonnell Douglas* framework. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, prohibits discrimination against qualified employees and job applicants with a disability, and requires reasonable accommodation in employment practices for qualified persons with disabilities. The standards used to determine if there is a violation of the Rehabilitation Act are the same standards that are used under the Americans with Disabilities Act of 1990. 29 U.S.C. § 791(g) (citing 42 U.S.C. §§ 12111, 12201–12204, 12210).

Here, the district court correctly held that Miller abandoned her discrimination claims by not even attempting to show that a similarly situated employee was treated more favorably. The failure to develop a claim in response to a motion for summary judgment is grounds for denial of that claim. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The record would not support a prima facie discrimination claim even if Miller had attempted to make one. Although Miller argues on appeal that Erica Bethany was treated more favorably, Bethany was not similarly situated to Miller.

To be "similarly situated" in the disciplinary context, an employee must be similarly situated in all "relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Relevant factors include whether the employee had the same supervisor, was subject to the same standards, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Bethany was not similarly situated to Miller because she did not access her coworkers' personnel files or openly defy simple instructions from her supervisor. Because Bethany did not commit the infractions that formed the basis of Miller's termination, the VA had no similar grounds to terminate Bethany. In addition, Bethany was not a probationary employee. Based on these differentiating circumstances,

Bethany was not similarly situated for the purposes of Miller's termination. *See Mitchell*, 964 F.2d at 583.

On appeal, Miller argues for the first time that she can make a prima facie case of discrimination because Bethany "replaced" her. (App. Br., 49–52.) Miller forfeited that argument by failing to raise it before the district court. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015) ("As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited."). And even if the argument were not forfeited, it would be meritless because Bethany did not replace Miller. The record in this case shows that Bethany started working alongside Miller in May of 2020, about a month after Miller was hired and around nine months before Miller was terminated. (R. 39-7: Bethany Hiring Form, 584). Nor was Bethany promoted to fill Miller's vacancy—instead, when Bethany was hired at the GS-06 level, it was anticipated that she could be promoted to GS-07. (*Id.*). In addition, although Bethany is younger than Miller, she is not outside of Miller's protected classes in terms of sex, race, or disability status. In this regard, Miller's allegation on appeal that Bethany "did not have a disability" (App. Br., 50) is entirely unsupported and contradicted by

Miller's testimony that she does not know whether Bethany has a disability. (R. 39-2, Deposition of Miller, 281).

## II. Miller failed to make a prima facie case of retaliation.

Next, the district court properly determined that Miller failed to make a prima facie retaliation claim.

Title VII and the ADEA prohibit an employer from retaliating against an employee for asserting her right to be free from discrimination under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). To state a prima facie retaliation claim, a plaintiff must allege facts showing that (1) she engaged in protected activity, (2) her employer knew about it, (3) her employer took an adverse employment action against her, and (4) the adverse action was causally related to the protected activity. *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 880 (6th Cir. 2013) (Title VII); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (ADEA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act). The mixed-motive theory is not applicable to retaliation claims, so the complaining party must establish but-for causation. *University of Texas Sw. Med. Ctr. v. Nasser*, 570 U.S. 338, 360 (2013).

Applying this standard, the district court noted correctly that Miller abandoned her retaliation claim by failing to make any meaningful attempt to address the elements of a prima facie claim in her response to the VA's motion for summary judgment. (R. 51: Order, 1136 (citing *McPherson v. Kelsey*, 125 F.3d at 995–96)).

And despite Miller's failure to address the elements of a prima facie retaliation claim, the district court correctly determined that the record showed no relevant protected activity, no knowledge on the part of Miller's supervisors, and no apparent causal connection to Miller's termination. With respect to protected activity, Miller's complaints about her coworkers and Osterbeck were not based on her race, age, sex, or disability status. With respect to supervisor knowledge, both Osterbeck and Gonzales testified that they were not aware of Miller engaging in protected activity before she was terminated, and there is no evidence to the contrary. And with respect to a causal connection, there is no evidence that Miller was terminated for anything other than the plainly legitimate reasons offered by the VA—Miller would not take direction from her supervisor and misused her HR position to wrongfully access her coworkers' employment records.

## III. Miller's pretext argument is factually baseless and legally irrelevant.

The Court should not consider Miller's pretext argument because Miller failed to make a prima facie case of either discrimination or retaliation. But even if considered, Miller's pretext argument is factually baseless. There was nothing pretextual about the VA's reasons for terminating Miller. The VA followed an ordinary and rational process in deciding to terminate Miller: (1) Osterbeck recommended that the VA end Miller's probationary employment after she openly defied his direction to stop sending unnecessary reply-all emails; (2) because Osterbeck did not have authority to terminate Miller, the request was forwarded to Osterbeck's supervisor, Eric Gonzales; (3) while the request was pending with Gonzales, the VA learned that Miller wrongfully accessed her coworkers' personnel files; and (4) based on both reasons, Gonzales made the decision to terminate Miller. The VA's reasons for terminating Miller were not "shifting" or after-acquired—they were cumulative and chronologically sensible.

In contrast, Miller's argument that the VA terminated her before learning that she wrongfully accessed her coworkers' personnel files is entirely speculative and contradicted by her own testimony. Her

termination letter was electronically signed and dated on February 24, 2021, the day after Osterbeck uncovered Miller's wrongful access of personnel files. (R. 39-17: Termination Letter, 671–72; R. 39-20: Wrongful Access Report, 676–77). Consistent with that fact, Gonzales testified that he made the decision to terminate Miller on February 24, 2021. (R. 39-18: Gonzales Declaration, 674). And Miller's own words belie this argument: she testified repeatedly and unequivocally that she was terminated on February 24, 2021. (R. 39-2: Miller Deposition, 185, 246, 278).

Similarly, the Court should reject Miller's "cat's paw" theory. As an initial matter, Miller forfeited this argument by failing to raise it before the district court. *See Kreipke*, 807 F.3d at 781 (6th Cir. 2015). And even if Miller had not forfeited the cat's paw argument, it would fail. Under the cat's paw theory, "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and that if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)).

The cat's paw theory has no proper application to this case because Miller fails to show that Osterbeck's termination recommendation was discriminatory or retaliatory. So even if Osterbeck had been the decisionmaker, Miller would fail to make a prima facie case. Miller also would fail to show that Gonzales's termination decision was proximately caused by Osterbeck's recommendation. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d at 351 (noting that the cat's paw theory does not apply if the ultimate decisionmaker "undertakes an investigation which results in an adverse action for reasons unrelated to the supervisor's original biased action"). Instead, the record reflects that Gonzales made an independent determination to end Miller's probationary employment and that he made that decision only after he learned that Miller wrongfully accessed her coworkers' personnel files, which is plainly grounds for termination from a trusted HR position.

## IV. Miller failed to establish that she was subjected to a hostile work environment.

The district court correctly determined that Miller failed to show that she was subjected to a hostile work environment under Title VII, the ADEA, or the Rehabilitation Act. No reasonable factfinder could

conclude that the alleged comments by Osterbeck were severe and pervasive enough to affect a term or condition of Miller's employment.

On appeal, Miller alleges that the district court applied the wrong standard for hostile work environment claims and failed to account for new guidance from this Court in *McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024). But the district court cited *McNeal* and applied the correct standard. (R. 51: Order, 1139). The district court correctly observed that alleged harassment is not actionable unless it is severe and pervasive enough to affect a term or condition of employment. (*Id.*).

In *McNeal*, this Court held that "[b]ecause hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims, *Muldrow v. City of St. Louis,* 601 U.S. 346, 346 (2024)]'s holding that Title VII does not require plaintiffs to show 'significant' harm applies to both types of claims." *McNeal*, 117 F.4th at 904. Nevertheless, the court in *McNeal* continued to apply the pre-*Muldrow* severe and pervasive standard as a threshold matter. *Id.* ("Thus, when we consider whether a hostile-work environment was severe or pervasive enough to violate Title VII, we effectively ask

whether it left an employee 'worse off respecting employment terms or conditions.'") (quoting *Muldrow*, 601 U.S. at 355).

The continuing validity of the severe and pervasive standard was reaffirmed by this Court in *Kellar v. Yunion*, 157 F. 4th 855 (6th Cir. 2025). In *Kellar*, the court made clear that "*McNeal* did not discard the objective standard that stands as a core requirement to hostile-work-environment claims." 157 F. 4th at 872. Accordingly, "[p]laintiffs still must show a work environment that 'would reasonably be perceived . . . as hostile or abusive.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, (1993)). And, in this regard, courts should consider the same factors: "frequency of the discriminatory conduct; its severity; whether it is physically threating or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). The *Kellar* court noted that "[t]his remains a high bar, as the employer's conduct must still reflect a workplace culture of harassment permeated with hostility towards the protected class." *Id.* at 873.

The district court properly applied this standard and rejected Miller's hostile work environment claims. Miller's allegations of sexual harassment—arising from one encounter in which Osterbeck allegedly referred to himself as the "candy man" and one encounter in which Osterbeck allegedly "ogled" Miller—fall short of the severe and pervasive threshold. *See Clark v. United Parcel Service*, 400 F.3d 341, 351 (6th Cir. 2005) (finding no hostile work environment where male supervisor told sexual jokes, twice placed a vibrating pager against a female plaintiff's thigh, and pulled on her overalls after she told him that she was wearing a thong underneath); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

Similarly, Miller's allegations about disability-based hostility—that Osterbeck yelled at her, criticized her work performance, and said she didn't "think like everybody else in the office"—were not severe or pervasive enough to affect a term or condition of Miller's employment. In *Kellar*, this Court rejected a similarly thin allegation of disability-based hostile work environment. *Kellar*, 157 F.4th at 874–76. In reaching that holding, the court noted that "[c]onversations between an

employee and his superiors about his performance" do not create a hostile work environment "simply because they cause the employee distress." *Id.* at 874 (quoting *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998)). Similarly, a single incident of a supervisor "express[ing] skepticism regarding [an employee's] condition" is not enough. *Id.* (quoting *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002).

## Conclusion

The district court's grant of summary judgment should be affirmed.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ *Christopher Doyle*
Christopher Doyle
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9595
christopher.doyle@usdoj.gov

Dated: March 4, 2026

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), it contains 5385 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Christopher Doyle
Assistant United States Attorney

Dated: March 4, 2026

## Certificate of Service

I certify that on March 4, 2026, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Dewey Rick Martin, drickmartin@glottaassociates.com

/s/ Christopher Doyle
Assistant United States Attorney

## Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 22-cv-12865:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 10 | Second Amended Complaint | 31–36 |
| 39 | Gov't Mot. Summary Judg. | 132–63 |
| 39-2 | Miller Deposition | 167–314 |
| 39-3 | Hiring Form | 315 |
| 39-4 | Formal Complaint | 316 |
| 39-5 | Osterbeck Deposition | 317–536 |
| 39-6 | Bethany Deposition | 537–83 |
| 39-7 | Bethany Hiring Form | 584 |
| 39-8 | Report of Contact | 585 |
| 39-9 | Thompson Hiring Form | 586 |
| 39-10 | Render Deposition | 587–630 |
| 39-11 | January 13 Email | 631 |
| 39-12 | January 7 Email to Berry | 632–33 |
| 39-13 | Berry Deposition | 634–63 |
| 39-14 | January 27 Email | 664–66 |
| 39-15 | January 20 Email | 667 |

| | | |
|---|---|---|
| 39-16 | January 25 Email | 668–69 |
| 39-17 | Termination Letter | 670–72 |
| 39-18 | Gonzalez Declaration | 673–74 |
| 39-19 | February 23 Email | 675 |
| 39-20 | Wrongful Access Report | 676–77 |
| 39-21 | Notice of Acceptance | 678–80 |
| 39-22 | Final Agency Decision | 681–703 |
| 48 | Miller Response Brief | 832–76 |
| 48-13 | December 28, 2020 Email | 1039–40 |
| 48-14 | January 22 Email | 1041–51 |
| 48-19 | Rushing Deposition | 1083–85 |
| 50 | Gov't Reply Brief | 1107–16 |
| 51 | Order Grant. Summary Judg. | 1118–42 |
| 52 | Judgment | 1143 |
| 53 | Notice of Appeal | 1144 |