Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 1

NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0334n.06

Case No. 25-1544

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 27, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| TARA MILLER,<br>Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, Secretary of the United States Department of Veterans Affairs,<br>Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>OPINION |

Before: GILMAN, GRIFFIN, and READLER, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Tara Miller alleges that she was subjected to discrimination and harassment based on her race, sex, age, and disability status during her employment with the United States Department of Veterans Affairs (the VA). She accordingly sued the VA and its secretary Dennis McDonough (collectively, Defendants), asserting claims of discrimination, retaliation, and a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the ADEA), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the Rehabilitation Act).

The district court granted summary judgment in favor of Defendants on all claims. It reasoned that Miller had failed to present sufficient evidence to establish a prima facie case of discrimination or retaliation, and that the alleged harassment was not sufficiently severe or

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 2

pervasive to support a hostile-work-environment claim. Miller now appeals. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Miller is an African American woman who previously served in the U.S. Army Reserve. During her military service, she was sexually assaulted on two occasions by male soldiers. As a result, she suffers from a service-connected psychiatric disability—post-traumatic stress disorder with a history of military sexual trauma.

In April 2020, at age 50, Miller was hired as a probationary human-resources assistant at the John D. Dingell Department of Veterans Affairs Medical Center in Detroit. Her probationary period was for two years. Miller was hired through the federal government's noncompetitive hiring authority for individuals with disabilities, commonly known as "Schedule A." Eric Osterbeck, a senior manager in the human-resources department, hired Miller and became her supervisor. Osterbeck, who was himself a Schedule A hire, knew that Miller had a disability, but was unaware of the specific nature of her condition.

According to Miller, Osterbeck began subjecting her to unwelcome "sexual advances and sexual innuendos" almost immediately after she was hired. During a meeting in his office, for example, Osterbeck invited Miller to help herself to candy and, "with a flirtatious smile," remarked that "around here they call me the Candy Man." Miller alleges that the comment triggered the trauma associated with her prior sexual assaults because "the expression 'Candy Man' has a sexual connotation in that 'Candy' refers to a man's 'penis.'"

A week later, Osterbeck allegedly "ogl[ed]" Miller "from [her] hips to [her] breast[s]" and "stated with a flirtatious grin: 'You look nice!'" This encounter again triggered Miller's trauma. She thus attempted to more forcefully reject Osterbeck's purported advances by "ma[king] sure"

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 3

that "he saw a look of disgust and shock on [her] face," "loudly sigh[ing]," and "rush[ing] away from him." According to Miller, her "strong expression of opposition to Osterbeck's unwelcomed sexual advances" prompted Osterbeck to "decide[] that he had to get rid of me."

Approximately one month later, Osterbeck hired Erica Bethany, an African American woman in her 30s, as a human-resources assistant. Unlike Miller, Bethany was not a probationary hire because she had worked for the VA since 2007. The record does not indicate whether Bethany has a disability. Miller alleges that Bethany "acceded to [Osterbeck's] sexual advances, sexual banter, and sexual innuendos" by "engaging in flirtatious behavior," "spewing the 'F' word[,] and wearing extremely tight fitting and sexually provocative clothing." On one occasion, Bethany told Miller to "just . . . play the game."

According to Miller, Osterbeck rewarded Bethany "for being willing to 'play the game'" by treating her more favorably. This purported preferential treatment included permitting Bethany to report to work late, providing her with better training, allowing her to wear provocative clothing, tolerating her allegedly "hostile, belligerent, and disrespectful" conduct toward Miller and other VA employees and patients, and permitting her to use profanity.

Miller and Bethany had a strained working relationship, which Miller attributed to what she perceived as Bethany's hostile attitude toward her. Miller, however, did not believe that Bethany's conduct was motivated by discrimination based on Miller's race, sex, age, or disability status. Nevertheless, in August 2020, Miller prepared a "Report of Contact" statement documenting her work-related disputes with Bethany and stating that she "d[id] not want to engage in any form of communication with [Bethany]." Osterbeck received various complaints from both Miller and Bethany concerning their ongoing workplace conflicts.

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 4

Miller also experienced difficulties working with Angela Thompson, an African American woman approximately the same age as Miller, who was responsible for training her. In January 2021, Miller asked Osterbeck to arrange a mediation between herself and Thompson to address their working relationship and Thompson's allegedly "demeaning tone" and "disrespectful comments." Zenia Berry, a representative from the VA's Equal Employment Opportunity Office, conducted the mediation. Berry testified that Miller's complaints did not involve discrimination based on race, age, sex, or disability, but instead reflected Miller's belief that "her work was being overly scrutinized by her coworkers."

In addition to her conflicts with coworkers, Miller experienced performance issues stemming from her failure to follow certain instructions from Osterbeck. In January 2021, for example, Osterbeck instructed the human-resources staff to not use the "reply all" function in response to mass emails. A few days later, however, Miller "replied all" to a mass email about the presidential inauguration, which Osterbeck perceived to be a "direct violation of the guidance [he] provided." When Osterbeck reminded Miller of his instruction, she sent him a lengthy email defending her actions, stating: "Mr. Osterbeck[,] with all due respect to you: It is my understanding that when an electronic communication is sent to a 'said person, or personnel' that out of courtesy the recipient may respond in a professional manner." Miller also failed to follow Osterbeck's instructions regarding her work in processing employee health benefits.

Miller eventually decided to escalate her complaints concerning Osterbeck, Bethany, and Thompson. On January 23, 2021, she sent a lengthy email to Pamela Reeves, then the director of the Detroit VA medical center, alleging "harassment, bullying, bias, unfair treatment, and disrespect from Mr. Osterbeck, Angela Thompson, and others." She also complained in the email that she had not received a COVID-19 bonus even though Osterbeck, Bethany, and Thompson

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 5

had. Miller made that determination two days earlier by accessing the electronic personnel files of Osterbeck, Bethany, and Thompson. Although Miller had access to those files by virtue of her position as a human-resources employee, her access violated VA protocol because it was not for an authorized official purpose.

Miller also complained about Osterbeck's behavior to Cindy Bukowsky, a VA harassment coordinator. In January 2021, Miller sent several emails to Bukowsky alleging that Osterbeck "constantly tells me something that I have done wrong," "accuses me of throwing my co-workers under the bus," and has commented that "[m]y thought process differs from everyone in the office." Bukowsky forwarded Miller's complaints to Jerald Rushing, a VA labor-relations investigator. Rushing subsequently called Miller to discuss her complaints. He also notified Osterbeck on February 2, 2021 that he had received an "allegation of [w]orkplace [h]arassment" from Miller and would be investigating the matter.

On January 25, 2021, before learning that Miller had improperly accessed her coworkers' personnel files or that Rushing had initiated an investigation, Osterbeck requested that Miller's employment be terminated. In support of his request, Osterbeck cited Miller's failure to follow instructions regarding email etiquette and the processing of employee health benefits. He also noted that Miller "continues to have interpersonal issues with several of her coworkers," thereby "caus[ing] tension, friction, and animosity for the entire team," and that she was "the common denominator in all interpersonal issues within the department." The request was ultimately forwarded to Osterbeck's supervisor Eric Gonzales for approval on February 19, 2021.

Four days later, Thompson informed Osterbeck of her belief that Miller had accessed her personnel file because Miller had referenced Thompson's middle name, which Miller would not have known otherwise. This prompted Osterbeck to review the access logs for the personnel

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 6

system. He discovered that Miller had indeed accessed several personnel files, including those of himself, Bethany, and Thompson. Osterbeck then informed Gonzales of this information.

Gonzales considered Miller's conduct to be a "serious breach of protocol for an employee trusted with access to personnel files." For this reason, and because of her repeated failures to follow directions, Gonzales made the decision to terminate Miller's probationary employment on February 24, 2021. He was unaware at the time that Miller had made any prior discrimination complaints.

Gonzales accordingly prepared a termination letter, dated February 19, 2021, informing Miller that her employment would end "effective . . . February 24, 2021" due to her "failure to follow direction." Osterbeck read the letter to Miller on the morning of February 24 and asked her to sign it, but she declined.

In March 2021, Miller filed an Equal Employment Opportunity complaint, alleging that she had been subjected to sexual harassment as well as discrimination based on age, race, sex, and disability. A final agency decision was issued in August 2022, in which the VA rejected all of Miller's claims and notified her of her right to file a civil action. Miller thereafter commenced this lawsuit in November 2022. She now asserts claims for discrimination, retaliation, and a hostile work environment, in violation of Title VII, the ADEA, and the Rehabilitation Act.

In June 2025, the district court granted summary judgment in favor of Defendants on all of Miller's claims. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

"The standard of review for summary judgment is de novo." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). "Summary judgment is proper when,

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 7

viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Helphenstine v. Lewis County*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017)). "The party moving for summary judgment carries the initial burden of showing the absence of a genuine dispute of material fact; if it satisfies that burden, the nonmoving party must show 'specific facts that reveal a genuine issue for trial.'" *Marshall v. The Rawlings Co.*, 854 F.3d 368, 381 (6th Cir. 2017) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014)).

**B. The district court did not err in granting summary judgment on Miller's discrimination claims**

We begin with Miller's claims of discrimination under Title VII, the ADEA, and the Rehabilitation Act. Section 717 of Title VII prohibits the federal government from discriminating against its employees "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The ADEA's Section 15 likewise prohibits the federal government from discriminating against its employees "based on age." 29 U.S.C. § 633a(a). And the Rehabilitation Act prohibits federal employees from being "subjected to discrimination" "solely by reason of [their] disability." 29 U.S.C. § 794(a).

Discrimination under these statutes may be proven through either direct or circumstantial evidence. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (Title VII); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (the ADEA); *Crocker v. Runyon*, 207 F.3d 314, 321 (6th Cir. 2000) (the Rehabilitation Act). "Where a plaintiff relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies." *Barrett*, 556 F.3d at 515 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (Title VII); *see also*

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 8

*Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (the ADEA); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 842–43 (6th Cir. 1996) (the Rehabilitation Act).

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

To establish a prima facie case of race or sex discrimination under Title VII, or age discrimination under the ADEA, a plaintiff must show that "(1) she is a member of a protected group; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated less favorably than a similarly-situated employee outside the protected class." *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000) (Title VII); *see also Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (the ADEA). Establishing a prima facie case of disability discrimination under the Rehabilitation Act, on the other hand, requires a plaintiff to show "(1) that [s]he is disabled, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodation, (3) that [s]he suffered an adverse employment action, (4) that h[er] employer knew or had reason to know of h[er] disability, and (5) that, following the adverse employment action, either [s]he was replaced by a nondisabled person or h[er] position remained open."

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 9

*Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 578 (6th Cir. 2022) (quoting *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)).

Here, Miller does not appear to argue that she was subjected to any discrimination based on race or sex. The district court therefore properly granted summary judgment on her claim under Title VII. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited.").

Miller instead focuses solely on her claims of discrimination based on age and disability. Because she acknowledges that these claims rely on circumstantial rather than direct evidence, they are governed by the *McDonnell Douglas* burden-shifting framework.

We conclude that Miller's discrimination claims based on age and disability fail because she did not raise a genuine dispute of material fact necessary to establish a prima facie case of discrimination. Indeed, Defendants specifically argued in their original summary-judgment motion before the district court that "Miller fails to establish a prima facie discrimination case." Yet Miller's opposition brief did not address that issue at all. The district court therefore correctly determined that Miller's discrimination claims could not be sustained because she "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Miller nevertheless attempts to present prima facie evidence of discrimination for the first time in her opening appellate brief. But "[a] party waives any arguments on appeal that it does not raise before the district court." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 348 (6th Cir. 2021); *see also Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002) ("This court does not ordinarily address new arguments raised for the first time on appeal."). Because Miller

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 10

had the opportunity to present a prima facie case of discrimination before the district court but failed to do so, she has forfeited that argument on appeal.

And even if we were able to consider Miller's arguments on this issue, nothing in the record evidences that Miller was replaced by a nondisabled person, that her position remained open, or that Defendants treated a similarly situated, non-protected employee more favorably. *See Willard*, 952 F.3d at 808; *Bledsoe*, 42 F.4th at 578. Furthermore, because Miller has not carried her initial burden under the *McDonnell Douglas* framework, we need not address her argument that Defendants rely on after-acquired evidence to justify her termination because that argument pertains solely to the pretext stage of the analysis. *See Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 540 (6th Cir. 2002) (holding that an employee's "failure to establish a prima facie case precludes us from reaching the questions of whether [the employer] had a legitimate, non-discriminatory reason for the reassignment and whether that reason was actually a pretext"). We accordingly find no error in the district court's grant of summary judgment on Miller's discrimination claims.

**C. The district court did not err in granting summary judgment on Miller's retaliation claims**

We turn next to Miller's retaliation claims under Title VII, the ADEA, and the Rehabilitation Act. As an initial matter, Miller's claim under the Rehabilitation Act fails at the outset in light of this court's recent holding that "§ 504 of the Rehabilitation Act does not provide a cause of action for retaliation." *Smith v. Mich. Dep't of Corr.*, 159 F.4th 1067, 1071 (6th Cir. 2025).

Moreover, Miller's claims of retaliation under the other statutes that she cites fail on the merits. "Courts analyzing retaliation claims apply the *McDonnell Douglas/Burdine* framework of shifting burdens of production and proof." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 11

"To establish a prima facie case of retaliation, a plaintiff must establish that: '(1) [s]he engaged in activity protected by Title VII [or the ADEA]; (2) the exercise of h[er] civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 880 (6th Cir. 2013) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) (Title VII); *see also Blizzard*, 698 F.3d at 288 (the ADEA).

The statutes recognize two types of "protected activity": (1) opposition to an unlawful practice under either statute, and (2) participation in an investigation or proceeding. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (Title VII); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002) (the ADEA). "[C]omplaining about allegedly unlawful conduct to company management is classic opposition activity." *Wasek*, 682 F.3d at 469. But not every workplace complaint constitutes protected activity. Rather, in order to receive protection, an employee's "expression of opposition must concern a violation of" the relevant statute. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007). "That is, in order for [an employee's] comments to [her employer] to be deemed protected activity," the employee "must have referenced alleged acts of [] discrimination by [her employer]." *Id.*

Here, Miller's retaliation claims fail because she did not raise a genuine dispute of material fact necessary to establish a prima facie case of retaliation. As with Miller's discrimination claims, Defendants specifically argued in their summary-judgment motion below that Miller "fails to establish . . . a prima facie retaliation claim." Yet Miller's opposition brief again failed to respond to that argument. The district court therefore correctly granted summary judgment on Miller's retaliation claims because she failed to address an essential element of those claims. *See Celotex*,

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 12



477 U.S. at 323. And Miller cannot cure that failure by attempting to establish a prima facie case for the first time in her opening appellate brief. Because she failed to present those arguments to the district court, she has forfeited them. *See Jackson*, 999 F.3d at 348.

Moreover, even if we were able to consider Miller's arguments, the record reflects that all of Miller's complaints about Osterbeck (as well as about Bethany and Thompson) involved nothing more than general workplace conflict. Because Miller's complaints neither "referenced alleged acts of [] discrimination" nor "concern[ed] a violation of" the relevant statutes, they do not constitute protected activity. *See Fox*, 510 F.3d at 591.

Miller has accordingly failed to establish a prima facie case of retaliation. And because she did not satisfy her initial burden under the *McDonnell Douglas* framework, we need not consider her pretext argument. *See White v. Standard Ins. Co.*, 529 F. App'x 547, 551 (6th Cir. 2013) (holding that the pretext inquiry is one "courts reach only if a plaintiff has established a *prima facie* case" of retaliation). We therefore affirm the district court's grant of summary judgment on all of Miller's retaliation claims.

**D. The district court did not err in granting summary judgment on Miller's hostile-work environment claim**

Finally, we consider Miller's claim that she was subjected to a hostile work environment under Title VII, the ADEA, and the Rehabilitation Act. "A hostile work environment claim [based on race] requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (Title VII). The same elements apply to hostile-work-environment claims based on sex, age, and disability status. *See Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (sex under

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 13

Title VII); *McNeal v. City of Blue Ash*, 117 F.4th 887, 898 (6th Cir. 2024) (age under the ADEA); *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (disability under the Rehabilitation Act).

"[T]he alleged harassment must be both objectively and subjectively severe and pervasive to be actionable." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir. 2024). "Courts consider the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)) (alterations in original). But the plaintiff need not "show that the harassment 'seriously affected h[er] psychological well being' or caused h[er] to 'suffer injury'—only that the environment 'would reasonably be perceived . . . as hostile or abusive.'" *McNeal*, 117 F.4th at 904 (quoting *Harris*, 510 U.S. at 22) (original brackets omitted).

Here, Miller alleges that Osterbeck sexually harassed her and engaged in other "retaliatory acts 'deployed strategically as harassment' to add to the climate of hostility," including

> (1) failing to inform [her] of her right to join the union; (2) failing to provide [her] with the proper training required to successfully perform her job duties and responsibilities . . . ; (3) continuing to allow a substantially younger co-worker Bethany to be consistently late for work in order to increase [Miller's] work load; (4) falsely accusing [her] of wrongdoing and of mistreatment of customers; (5) yelling, berating, and belittling [her] for minor errors that were also committed by Bethany and others, and threatening to terminate her employment; (6) mocking, demeaning and ridiculing [Miller's] psychiatric disability by referring to her as "crazy," [] repeatedly telling [her] she has "no common sense[,]" that she lacked the "mental" ability to "complete simple" tasks [or] "follow simple" directions, that he had "never supervised a person like her," and . . . [that] she [was] "skating on thin ice," constantly reminding [her] that she was a 2-year probationary employee who could be terminated at his discretion, and punish[ing her] for exercising [her] rights as a disabled veteran to medical treatment; and (7) soliciting customers to file false complaints against [her].

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 14

Most of these allegations, however, do not involve conduct based on a protected characteristic (race, sex, age, or disability) and therefore cannot support a hostile-work-environment claim under the relevant statutes. *See, e.g.*, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (holding that conduct "cannot be considered in the hostile environment analysis" if it is not "based upon" a protected characteristic).

The only acts that are arguably tied to Miller's protected characteristics are Osterbeck's alleged sexual harassment, his comments purportedly disparaging her disability, and his alleged punishment of Miller for "exercising [her] rights as a disabled veteran to medical treatment." But even accepting Miller's characterization of this conduct as true, she has not shown that the alleged harassment was sufficiently severe or pervasive to be actionable.

With respect to the alleged sexual harassment, Miller cites only two specific incidents: Osterbeck's "Candy Man" comment and his purported "ogling" of her body when she was first hired. This court, however, has consistently found comparable or even more egregious conduct to be insufficiently severe or pervasive to support a sex-based hostile-work-environment claim. *See, e.g.*, *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565, 567–71 (6th Cir. 2021) (holding that "five instances of sex-based harassment" in which the plaintiff's supervisors and coworkers made comments about the plaintiff's breasts were insufficiently severe or pervasive); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (holding that "three relatively isolated incidents" in which a supervisor "told vulgar jokes," "twice placed his vibrating pager on [the plaintiff's] thigh," and "pulled at [the plaintiff's] overalls after she told him she was wearing a thong" were insufficiently severe or pervasive).

The same is true of Osterbeck's alleged harassment of Miller based on her disability. Miller asserts that Osterbeck "mock[ed], demean[ed] and ridicule[ed]" her disability by calling her

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 15

"crazy," criticizing her for having "no common sense," and telling her that "she lacked the 'mental ability'" to perform her work. But "'[c]onversations between an employee and h[er] superiors about h[er] performance' do not create a hostile work environment 'simply because they cause the employee distress,'" and "a supervisor 'express[ing] skepticism regarding [an employee's] condition' is not enough." *Kellar v. Yunion, Inc.*, 157 F.4th 855, 874 (6th Cir. 2025) (citations omitted).

Nor does Miller present any evidence, aside from a single vague and conclusory statement, that Osterbeck ever punished her for "exercising [her] rights as a disabled veteran to medical treatment." "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)). We accordingly find no error in the district court's conclusion that Miller failed to present sufficient evidence of severe or pervasive harassment.

Miller nevertheless contends that the district court applied the wrong standard in requiring that her claims satisfy the severe-and-pervasive standard. According to Miller, the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024), requires a plaintiff to show only "some harm" to prevail on a hostile-work-environment claim.

But Miller misreads the impact of *Muldrow*. There, the Supreme Court held that a hostile-work-environment claimant need not show that "the harm incurred was 'significant'" or otherwise "exceed[ed] a heightened bar," but only that she suffered "some harm respecting an identifiable term or condition of employment." *Id.* at 355. As this court later clarified in *McNeal*, however, when courts "consider whether a hostile work environment was severe or pervasive enough," they are "effectively ask[ing] whether it left an employee 'worse off respecting

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 16

employment terms or conditions.'" *McNeal*, 117 F.4th at 904 (cleaned up) (quoting *Muldrow*, 601 U.S. at 355). In other words, *Muldrow*'s "some harm" language does not supplant the severe-and-pervasive standard; it simply describes the harm that the standard is designed to identify. Miller's contention that *Muldrow* abrogated that standard, or that the standard improperly requires "significant" or "heightened" harm, is therefore meritless. *See also Kellar*, 157 F.4th at 872 (holding that *Muldrow* and "*McNeal* did not discard the objective [severe-or-pervasive] standard that stands as a core requirement to hostile-work-environment claims").

Miller also contends that Defendants effectively conceded that her allegations satisfied the severe-or-pervasive standard because, according to her, their "own investigation 'determined' that Plaintiff-Appellant was subjected to a sex-based hostile work environment and 'accepted' her claim." In support, she cites the VA's letter accepting her Equal Employment Opportunity complaint, which states:

> We have determined your claim of harassment passes the severe or pervasive requirement for further processing. The above-identified events establish a pattern of conduct that could create a hostile work environment and/or that could interfere with the job performance of a reasonable person.

Miller, however, reads too much into the above language. The letter reflects only the VA's threshold determination that the allegations in her complaint warranted "further processing" and investigation. Miller fails to acknowledge that after completing its investigation, the VA issued a final agency decision rejecting all of Miller's claims.

For these reasons, Miller has failed to raise a genuine dispute of material fact in support of her claim that she experienced severe and pervasive harassment. Her hostile-work-environment claim is therefore without merit. We accordingly affirm the district court's grant of summary judgment on that claim.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

Case: 25-1544 Document: 43-2 Filed: 09/11/2026 Page: 17